J. A03003/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GET BUSY LIVING SOLUTIONS, LLC; AND PHILADELPHIA SHOWCASE LOUNGE, LLC, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| MAIN LINE INSURANCE OFFICE, INC.; CHRISTOPHER OIDTMAN; LANDMARK AMERICAN INSURANCE COMPANY; AND USG INSURANCE SERVICES, INC. F/K/A USG INSURANCE SERVICES OF PENNSYLVANIA, INC. | : : : : : : : | No. 1103 EDA 2015 |

Appeal from the Order Entered May 22, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: February Term, 2013, No. 1822

BEFORE: GANTMAN, P.J., MUNDY,J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                           **FILED MAY 23, 2016**

Appellants, Get Busy Living Solutions, LLC and Philadelphia Showcase Lounge, LLC, plaintiffs below, appeal from the Order entered in the Philadelphia County Court of Common Pleas granting summary judgment in favor of Appellees, Landmark American Insurance Company ("Landmark") and USG Insurance Services, Inc. ("USG"), defendants below, and denying Appellants' Motions for Partial Summary Judgment against Landmark. We conclude that the trial court properly granted summary judgment because Appellant's Landmark policy lapsed before Appellants' loss occurred,

absolving Landmark of the responsibility to insure the loss. Therefore, we affirm.

The trial court found the following facts:

> For several years before December 24, 2012, [Appellants] operated a bar/restaurant at 4912 Baltimore Avenue, Philadelphia, PA. Algernong Allen ("Allen") was the principal for both [Appellants]. As of December 2012, Allen owned and managed ten investment properties in total and was responsible for procuring property insurance for all of the properties.

> Three or four years before December 24, 2012, Allen began doing business with [Christopher] Oidtman [("Oidtman")] who was an insurance agent associated with insurance broker Main Line [Insurance Office, Inc. ("Main Line")]. The first time Allen obtained insurance through Oidtman, Allen handed Oidtman a check on December 24th. Thereafter, the insurance policies Oidtman obtained for Allen had terms running from December 24th to December 24th.

> At issue in this case is a commercial property insurance policy issued by Landmark, through its [m]anaging [g]eneral [a]gent, USG, to [Appellant] Philadelphia Showcase Lounge, LLC for the 4912 Baltimore Avenue property (the "Policy"). The Policy was effective from December 24, 2011, to December 24, 2012 at 12:01 a.m. Eastern Standard Time.

> On November 28, 2012, Landmark, through USG, sent a renewal quotation at the same price and on the same terms to Main Line. Allen and Oidtman, however, made no effort at this time to renew the policy, but rather looked for and secured quotes from other insurance companies in December 2012, including Conifer Insurance Company ("Conifer").

> On December 21, 2012, Oidtman sent and Allen received a test message asking if Allen wanted to renew insurance on the property. On December 24, 2012, at 7:21 a.m., after the 12:01 a.m. expiration for the

Landmark policy, Allen responded, "Yes" via text, wanting and intending to bind replacement coverage with Conifer.

On December 24, 2012, at approximately 1:00 p.m., there was a fire at the property. On December 26, 2012, at 11:04 a.m., in response to Allen's previous text [on December 24, 7:21 a.m.,] and now being informed about the fire by a subsequent text, Oidtman attempted to bind coverage for the property with Landmark. He, however, was told the policy had expired at 12:01 a.m. on December 24, 2012, and a statement of no losses and an application (among other things) would now be required. If Oidtman (or Allen) would have responded at any time before 12:01 a.m. on December 24, 2012, an email is all that would have been needed.

In spite of being told that the Policy had expired at 12:01 a.m. on December 24, 2012 [Appellants] sought coverage from Landmark under the Policy for their losses from the fire. Landmark denied coverage on the basis that the policy had expired before the loss and was not renewed.

Trial Ct. Op., 4/22/15, at 1-3.

## PROCEDURAL HISTORY

On February 19, 2013, Appellants commenced the instant action by filing a Complaint against Main Line, Oidtman, Landmark, and USG, for causes of action including breach of contract, negligence, breach of fiduciary duty, breach of statutory/regulatory duty, fraudulent misrepresentation, and negligent misrepresentation. On April 16, 2013, Appellants filed an Amended Complaint.

Eventually, all of the parties filed Motions for Summary Judgment. On February 14, 2014, Appellants filed a Motion for Partial Summary Judgment against Landmark. On March 4, 2014, Oidtman and Main Line also filed a

Motion for Partial Summary Judgment against Landmark. In their Motions, the parties argued that, although Landmark sent a renewal quotation, because it never sent notice of midterm cancellation or nonrenewal pursuant to 40 P.S. § 3403,[1] the policy remained in effect after its expiration time and date and Landmark was obligated to provide Appellants with insurance coverage for the fire.

Landmark and USG filed Motions for Summary Judgment on April 8, 2014, in which they argued that Appellants were not entitled under Section 3403 or the Policy to receive notice of nonrenewal or cancellation because the Policy was neither non-renewed nor cancelled by Landmark. Landmark argued that rather than not renew the policy, Landmark in fact offered to renew the Policy at the same price and on the same terms, but Appellants declined to accept Landmark's offer before expiration and the loss. **See** Landmark's Mot. For Summ. J., at 7.

On May 22, 2014, the trial court entered an Order denying Appellants' Motion for Summary Judgment, denying Oidtman and Main Line's Motion for Summary Judgment, granting Landmark's Motion for Summary Judgment, and declaring that the Policy "expired by its own terms at 12:01 a.m. on

---

[1] Section 3403 is part of a statute knows as "Act 86," 40 P.S. § 3401 *et seq*. Section 3403, requires insurers to provide written notice to insureds 60 days in advance of midterm cancellations or nonrenewals. 40 P.S. § 3403(a)(2) and (3).

December 24, 2012 and does not cover the fire loss that occurred after its expiration." Trial Ct. Order, 5/22/14, at 2 (unpaginated).

On June 6, 2014, Appellants filed a Motion for Determination of Finality pursuant to Pa.R.A.P. 341(c).[2] On July 8, the trial court entered an Order granting Appellants' Motion for Determination of Finality, certifying that an immediate appeal would facilitate resolution of the entire case.

On July 16, 2014, Appellants filed an appeal from the July 8, 2014 Order. On September 22, 2014, this Court quashed the appeal as untimely because the trial court entered its July 8, 2014 Order more than 30 days after entry of the underlying order.[3] *See Get Busy Living Solutions, LLC, et al. v. Main Line Ins. Office, Inc., et al.*, 2297 EDA 2014 (Pa. Super. filed Sept. 22, 2014).

On April 7, 2015, Appellants discontinued this case with prejudice as to Oidtman and Main Line, the sole remaining defendants. On April 8, 2015, this timely appeal followed.

---

[2] Rule 341(c) provides: "When more than one claim for relief is presented in an action . . . the trial court . . . may enter a final order as to one or more but fewer than all claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case." Pa.R.A.P. 341(c). "Unless the trial court . . . acts on the application within 30 days of entry of the order, the trial court . . . shall no longer consider the application and it shall be deemed denied." Pa.R.A.P. 341(c)(3).

[3] On July 15, 2015, Appellees, Main Line and Oidtman, also filed a notice of appeal from the July 8, 2014 Order. This Court likewise quashed that appeal as untimely. *See Get Busy Living Solutions, LLC, et al. v. Main Line Ins. Office, Inc., et al.*, 2034 EDA 2014 (Pa. Super. filed Sept. 29, 2014).

## ISSUES ON APPEAL

Appellant raises the following three issues for review:

> Did the [trial] court commit an error of law in not applying the protections of 40 P.S. § 3403 where the insurer did not issue any notice of cancellation or nonrenewal, had no direct communication with the insured, and where the insured wanted coverage, attempted to purchase replacement coverage, but had not yet obtained replacement coverage?
>
> Did the [trial] court commit an error of law by engaging in a common law analysis in contravention of mandatory statutory language that is free from ambiguity and provides complete relief?
>
> Did the [trial] court commit an error of law in failing to require the insurer to comply with policy provisions with respect to notification to the insured and the mortgagee for nonrenewal of the policy?

Appellant's Brief at 3.

## LEGAL ANALYSIS

Appellants challenge the trial court's decision to grant summary judgment in favor of Landmark. Accordingly, our standard of review is for an abuse of discretion or error of law, and our scope of review is plenary. **Sokolsky v. Eidelman**, 93 A.3d 858, 861-62 (Pa. Super. 2014).

Appellants' first two issues on appeal are predicated on their assumption that 40 P.S. § 3403 is applicable to the instant case. The trial court found Section 3403 inapplicable. We agree.

The underlying facts in this case are clear and not in dispute. The evidence of record indicates that Appellants' Landmark Policy term ran from

December 24, 2011, to December 24, 2012, at 12:01 a.m. Trial Ct. Op., 4/22/15, at 2. At no time during the Policy term did Landmark terminate the policy. Landmark also did not provide notice to Appellants that it intended to non-renew the Policy. In fact, on November 28, 2012, Landmark sought to renew Appellants' Policy by sending a renewal quotation to Allen. *Id.* However, Appellants did not timely accept Landmark's renewal offer, instead opting to shop around for replacement coverage. *Id.*

Statutory interpretation is a question of law, therefore our standard of review is *de novo,* and our scope of review is plenary. ***Brown v. Levy***, 73 A.3d 514, 517 (Pa. 2013). When ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning. ***See id.*** We are guided by the principle that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." ***See*** 1 P.S. § 1922(1).

Section 3403 requires insurers to provide written notice to insureds 60 days in advance of ***midterm cancellations*** or ***nonrenewals***. ***See*** 40 P.S. § 3403(a)(2) and (3) (emphasis added). Appellants argue that the statutory language is "completely straightforward" in that "coverage remains in effect until a proper renewal notice or notice of cancellation is issued." Appellants' Brief at 16. Appellants also aver that the Policy renewed automatically since Landmark did not send either of the notices that might have ended the policy by action of the insurer. ***Id.*** at 13, 24.

In support of their argument, Appellants rely on **Aegis Security Ins. Co. v. Commonwealth**, 478 A.2d 944 (Pa. Cmwlth. 1984).[4] **Aegis** is inapposite. **Aegis** involved notice statutes applicable to owner-occupied residential or personal property—Sections 5(a)(9) and 5(c) of the Unfair Insurance Practices Act, 40 P.S. §§ 1171.1-1171.15—which have specific provisions requiring end of policy term lapse notices. The property at issue here is not owner-occupied residential or personal property. Therefore Sections 5(a)(9) and 5(c) are not applicable. Moreover, the record in **Aegis** is not clear as to whether the insured knew that his policy was expiring. There is no such doubt in the instant case.

Instantly, the trial court aptly concluded "[n]either Section 3403 or the [P]olicy's Pennsylvania Cancellation and Nonrenewal Endorsement prescribe a responsibility onto Landmark to send out a nonrenewal notice if [Appellants] failed to respond to or rejected the renewal offer." Trial Ct. Op., 5/22/14, at n.1. We agree with the trial court's conclusion.

The plain language of Section 3403 bars Appellants' assertion that this notice provision applies to situations other than midterm cancellations or policy nonrenewals. Were we to accept Appellants' argument, we would be

---

[4] Appellants also rely on **Pozzi v. Merch. and Bus. Men's Mut. Ins. Co.**, 1993 WL 319503 (E.D. Pa. Aug. 19, 1993) (addressing midterm insurance policy cancellation); and **Paul v. Dwyer**, 188 A.2d 753 (Pa. 1963) (decided more than 20 years before Section 3403 was enacted and addressing factual issue of whether insurer mailed insured notice of cancellation). These cases are factually and legally distinguishable and do not support Appellants' position.

creating an obligation on an insurance company to provide notice of a policy lapse that is not mandated by Section 3403. Appellants' interpretation of Section 3403 would require us to "supply words which are not to be found in the statute and so give to it a meaning which it otherwise does not have." *Calvert Distillers Corp. v. Bd. of Fin. & Revenue*, 103 A.2d 668, 670 (Pa. 1954).

Appellants' Policy lapsed on December 24, 2012, at 12:01 a.m., as that was the date and time upon which it expired. Trial Ct. Op., 4/22/15, at 2; Trial Ct. Order, 5/22/14, at 2 (unpaginated). Appellants had notice that the end of the Policy term was approaching. Trial Ct. Op., 4/22/15, at 2. As we have determined that Landmark was not required by Section 3403 to provide Appellants specific notice that the Policy would lapse at that date and time, we conclude Appellants' first two claims must fail.

In their third issue, Appellants argue that the Policy's language created a duty that Landmark cover the loss in this case. Appellants' Brief at 28-29. The trial court correctly found that, because the Policy had expired prior to Appellants' loss, Landmark owed Appellants no duty to provide coverage. Accordingly, this claim also fails.

Our standard of review regarding contract interpretation is well-settled. Because contract interpretation is a question of law, our standard of review is *de novo*, and the scope of review is plenary. ***Ragnar Benson Inc.***

**v. Hempfield Township Municipal Authority**, 916 A.2d 1183, 1188 (Pa. Super. 2007).

The Policy states, in relevant part: (1) if the Policy has been in effect for less than 60 days, Landmark may cancel it with 30 days written notice; (2) if the Policy has been in effect for more than 60 days, Landmark may cancel it, for one of six enumerated reasons, with 60 days written notice; (3) Landmark will provide at least 60 days written notice if it intends to nonrenew the Policy; and (4) Landmark will provide at least 30 days written notice if it intends to increase the Policy premium at renewal. R.R. at 97.27a-97.27(b).

The goal of contract interpretation is to ascertain the intent of the parties as manifested by the language of the written instrument. **Madison Construction Co. v. Harleysville Mutual Insurance Co.**, 735 A.2d 100, 106 (Pa. 1999). "Where the language of the contract is clear and unambiguous, a court is required to give effect to that language."[5] **Id.** (quotation omitted). We must "interpret its meaning solely from the contents within its four corners, consistent with its plainly expressed intent." **Seven Springs Farm, Inc. v. Croker**, 748 A.2d 740, 744 (Pa. Super. 2000), *affirmed*, 801 A.2d 1212 (Pa. 2002). Only when the terms are ambiguous may we consider extrinsic evidence. **Id**. "We will not, however,

---

[5] "A contract is not ambiguous merely because the parties do not agree on its construction." **Seven Springs Farm, Inc. v. Croker**, 748 A.2d 740, 744 (Pa. Super. 2000).

distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." ***Madison Construction Co.***, 5735 A.2d at 106 (citation omitted). Furthermore, "when a contract fails to provide for a specific contingency, it is silent, not ambiguous." ***Seven Springs Farm, Inc.***, 748 A.2d at 744 (citation omitted). In such circumstances, this Court will not read into the contract a term it clearly does not contain. ***Id***.

The language of the Policy at issue here with respect to notice clearly and unambiguously requires Landmark to provide notice to Appellants of cancellation, nonrenewal, or an increased renewal premium. R.R. 97-27a-97.28a. The Policy is silent on the issue of Landmark's obligation to provide notice of lapse where the term length is clearly set forth in the Policy. We will not read into the Policy a term it does not contain. ***See Seven Springs Farm, Inc.***, 748 A.2d at 744. Moreover, Appellants cannot argue they were not aware of the upcoming term expiration. They were given an opportunity to renew the Policy on the same terms on November 28, 2012, but failed to act affirmatively before the Policy expired. Trial Ct. Op., 4/22/15, at 2.

Based on the foregoing, we conclude the trial court did not abuse its discretion or commit an error of law in granting Landmark's Motion for Summary Judgment.

Order affirmed. Jurisdiction relinquished.

President Judge Gantman joins the memorandum.

Judge Mundy files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2016