J-A08016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| DAVID B. FORD, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| VIRGINIA M. FORD, | |
| Appellant | No. 1548 EDA 2015 |

Appeal from the Order Entered April 23, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 03-03396

| DAVID B. FORD, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| VIRGINIA M. FORD, | |
| Appellee | No. 1558 EDA 2015 |

Appeal from the Order Entered April 23, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 03-03396

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 22, 2016**

Appellant, Virginia M. Ford (Wife), appeals from an April 23, 2015 order granting, in large part, a petition for special relief filed by David B. Ford (Husband) in the parties' equitable distribution dispute.  Husband cross-appeals those aspects of the trial court's April 23, 2015 order that

*Retired Senior Judge assigned to the Superior Court.

denied certain requests forwarded in his petition. We affirm, in part, and vacate, in part.

Husband and Wife married on August 26, 1972 and separated in 2003. Thereafter, Husband filed for divorce on February 26, 2004. Despite their separation and divorce action, Husband and Wife filed joint income tax returns for the years 2002, 2003, 2004, and 2007. Because the New York Department of Taxation and Finance (NY Taxing Authority) was challenging Husband's claim that he was not a New York resident, the parties entered into indemnification agreements for tax years 2004 and 2007, under which Husband agreed to hold Wife harmless for all taxes, penalties, interest, or other payments they owed as a result of the joint returns.[1]

On or around December 3, 2008, the trial court entered an equitable distribution order giving 55% of the parties' marital estate to Husband and 45% to Wife. Thereafter, on October 4, 2010, the trial court entered a second equitable distribution order based upon a stipulation of the parties (2010 order). Paragraph seven of the 2010 order stated:

> The parties have acknowledged that prior income tax returns filed jointly by the parties and individually by [Husband] have been, presently are, and in the future may be, reviewed by various taxing authorities with respect to whether [Husband] was a resident of a given jurisdiction and whether he owes taxes in that jurisdiction. To that extent, any and all tax issues shall

---

[1] Tax indemnification agreements for the years 2002 and 2003 were also executed, but have no relevance to these appellate proceedings.

remain open until said issues have been fully and completely addressed by the New York Court System.

Trial Court Order, 10/4/10, at ___ ¶ 7.

In December 2010, the parties entered into a subsequent stipulation, which they eventually included in a court order filed on February 23, 2011 (2011 order). The 2011 order declared that paragraph 7 of the 2010 order should be stricken and replaced with the following provision:

> The parties have acknowledged that income tax returns have been filed jointly by the parties and individually by [Husband], and that additional income tax returns will be filed for calendar year 2010 individually by [Husband] and [Wife].
>
> Certain of such income tax returns presently are, and in the future may be, reviewed by various taxing authorities, including, but not limited to, those in the State of New York. The issues include, but are not limited to, whether [Husband] was a resident of given jurisdiction and whether he owes taxes in that jurisdiction.
>
> With respect to the income tax returns filed for calendar years 2010 and prior:
>
> a. Each party represents that as of the date of execution of this Addendum, and except for the issues referenced in this Paragraph, [Husband/Wife are] not aware of any other material issues related to the payment of income taxes.
>
> b. The [trial c]ourt shall retain jurisdiction to allocate the parties' respective responsibility for any tax, interest and/or penalty imposed by any taxing authority against the parties jointly, or against [Husband] individually, as a result of the review of the issue of whether [Husband] was a resident of a given jurisdiction and whether taxes are owed in that jurisdiction.
>
> c. The [trial c]ourt shall retain jurisdiction to allocate the parties' respective responsibility for any tax, interest and/or penalty imposed by any taxing authority against either of the parties on any other basis; and

d. The [trial c]ourt shall retain jurisdiction to allocate the parties' respective responsibility for any legal and accounting fees expended in defense of any such claims.

Trial Court Order, 2/23/11, at __ ¶ 4.

The NY Taxing Authority audited both parties for the years 2004-2007 and audited Husband only for the years 2008-2011. For purposes of the 2004-2007 audits, the parties shared accounting and legal representation. Eventually, the NY Taxing Authority found that Husband was a New York resident during the years 2004-2007 based upon its determination of Husband's permanent domicile. Consequently, the authority issued a notice of deficiency in the amount of $31,307,827.26 on October 18, 2011. Husband appealed and, while the appeal was pending, counsel for the parties and the taxing authority entered settlement negotiations. The negotiations produced a settlement of $6,000,000.00 on June 20, 2013. The settlement allocated $3,540,000.00 in taxes and $2,460,000.00 in interest. Husband paid the settlement in full on June 30, 2013 by borrowing funds from his J.P. Morgan home equity line of credit.

Husband advised Wife of the tax settlement on or around June 22, 2013. Wife offered to resolve her dispute with Husband by agreeing to pay $1,373,170.95, which represented 45% of the amount owed for 2005 and 2006 (years for which tax indemnification agreements did not exist). Wife conditioned her offer on Husband's release of liability for taxes, penalties, and expenses for the years 2004 and 2007. Husband rejected Wife's offer.

On August 2, 2013, Husband filed a petition for special relief to recover Wife's share of the New York tax settlement. The petition asserted that the 2010 order and the 2011 order superseded the 2004 and 2007 indemnification agreements. Accordingly, Husband's petition demanded the following relief: 1) reimbursement from Wife for 45% of the tax settlement; 2) reimbursement for 45% of the legal and accounting fees and expenses incurred in defending the New York audits; 3) reimbursement for legal and accounting fees and expenses incurred in litigating the petition for special relief; and, 4) statutory interest of 6% on all sums owed by Wife up to the date that payment was made. In response to Husband's petition, Wife filed a counterclaim seeking reimbursement for legal fees and expenses incurred because of Husband's petition.

The trial court convened a hearing on February 10 and 11, 2015. On March 27, 2015, both sides submitted proposed findings of fact and conclusions of law. Wife thereafter filed a reply to Husband's submission on April 1, 2015 and Husband replied to Wife's post-trial filing on April 10, 2015.

The trial court entered an order on April 23, 2015 granting in part and denying in part Husband's petition. The court held that the 2011 order was a complete and integrated agreement that conflicted with and therefore superseded the 2004 and 2007 indemnification agreements. Consequently, the court directed Wife to reimburse Husband in the amount of

$3,100,550.22, consisting of Wife's 45% share of the tax settlement ($2,700,000.00), Wife's 45% share of the legal and accounting fees and expenses incurred in defending the tax audits ($111,531.78), and 6% statutory interest through March 27, 2015 for Wife's delayed payment ($289,018.44). The court denied Husband's request that the 6% interest charge continue through the date that Wife tendered full payment. Moreover, the court denied Husband's request for legal and accounting fees incurred in litigating the petition for special relief. The trial court further denied Wife's request for counsel fees and expenses from Husband. This appeal followed.[2]

In her brief, Wife raises the following claims for our consideration:

Did the trial court err by failing to conclude that the parties' 2004 and 2007 tax indemnification agreements [] were valid and enforceable contracts pursuant to which [Husband] was required to indemnify [Wife] for any tax liability, interest, penalties, and/or attorney, accounting or other fees pertaining to the 2004 and 2007 tax audits?

Did the trial court err by failing to conclude that the [2011 order] was not an integrated agreement and, therefore, the [i]ndemnification [a]greements remained in full force and effect?

Did the trial court err by adopting [Husband's] calculation of the legal and accounting fees expended in settling the New York tax audit[s] because the evidence [Husband] submitted included fees for services for years other than 2005 and 2006, which is inconsistent with the [i]ndemnification [a]greements, and because [Wife] was never consulted or communicated with regarding these services?

_____

[2] Both parties and the trial court have complied with Pa.R.A.P. 1925.

Did the trial court err by, contrary to the terms of the [i]ndemnification [a]greements, ordering [Wife] to pay 45% of the counsel and accounting fees and related costs and expenses incurred by [Husband] in defending the New York tax audit[s] and reaching a tax settlement with respect to the years 2004 and 2007 in light of testimony that [Wife] was never consulted or communicated with regarding these services?

Did the trial court err by, contrary to the terms of the [i]ndemnification [a]greements, including the amounts [Husband] paid his assistant, Jeri Sape, and his accountant, Chrystal Oakham, regarding their alleged work on the New York tax audits because [Wife never received consultation or communication] regarding these services and because the work described and the amounts submitted were highly speculative, had no basis in evidence, and were not limited to the years 2005 and 2006?

Did the trial court err by ordering [Wife] to pay 6% statutory interest on 45% of the amount [Husband] allegedly borrowed to pay a portion of the tax liability owed for the years 2004-2007, as [Wife] agreed to pay her share of the tax liability for the years 2005 and 2006 prior to [Husband] filing his petition for special relief?

Did the trial court err by, contrary to the terms of the [i]ndemnification [a]greements, ordering [Wife] to pay 6% statutory interest on 45% of the amount [Husband] allegedly borrowed to pay a portion of the tax liability owed for the years 2004-2007 because [Husband] failed to meet his burden of proving the amount of interest that actually accrued on the amount he borrowed and the statute the [t]rial [c]ourt relied on is [in]applicable to the present case?

Did the trial court err by denying [Wife's] counterclaim for counsel fees expended when defending against [Husband's] [p]etition for [s]pecial [r]elief because [Husband's] petition was dilatory, vexatious, and in bad faith in light of his knowledge of the [i]ndemnification [a]greements?

Wife's Brief at 5-7.[3]

Husband raises the following claims in his cross-appeal:

Should the trial court have granted Husband's request for reimbursement from Wife of the legal and accounting fees and expenses that he incurred in litigating his [p]etition for [s]pecial [r]elief?

Should the trial court have ordered Wife to pay Husband interest through the date of her full payment of the award?

Husband's Brief at 1.

Wife's first three claims challenge the trial court's construction of the 2011 order insofar as it addresses the parties' agreement with respect to the payment of taxes and related expenses for 2004-2007. We therefore consider these claims in a single discussion.

Wife asserts that the trial court erred in concluding that the 2011 order constituted a complete, integrated agreement that superseded the 2004 and 2007 tax indemnification arrangements. She maintains that the court erroneously overlooked extrinsic evidence showing that the 2011 order was incomplete. Wife points out that the absence of an integration clause, together with the absence of an express modification or renunciation of the indemnification provisions, show that the 2011 order was not a complete expression of the parties' intentions.[4] Wife also argues that there was no

_____

[3] We have re-ordered Wife's issues to facilitate our review.
[4] In the alternative, Wife argues that the indemnification agreements were ancillary instruments that could be enforced despite the 2011 order. In this
*(Footnote Continued Next Page)*

consideration to support modification of the indemnification agreements by the 2011 order. We disagree.

"[C]ontract interpretation is a question of law, [and] this Court is not bound by the trial court's interpretation." ***Ragnar Benson, Inc. v. Hempfield Township Municipal Authority***, 916 A.2d 1183, 1188 (Pa. Super. 2007), *quoting* ***Stamerro v. Stamerro***, 889 A.2d 1251, 1257 (Pa. Super. 2005). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." ***Ragnar Benson***, 916 A.2d at 1188 (citation omitted).

The following principles govern our determination of whether a writing constitutes a final and complete expression of the parties' agreement.

> It is well-settled that parol evidence is not admissible to alter or vary the terms of a contract which has been reduced to an integrated writing. . . . If a written contract is unambiguous and held to express the embodiment of all negotiations and agreements prior to its execution, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of that contract. ***McGuire v. Schneider, Inc.***, 534 A.2d 115 (Pa. Super. 1987); ***see also Gemini Equipment v. Pennsy Supply***, 595 A.2d 1211 (Pa. Super. 1991) (written contract, if unambiguous, must be held to express all negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements are admissible to explain or vary contract

---
*(Footnote Continued)* ────────────

context, Wife asserts that while the trial court may have enjoyed discretionary authority to allocate the parties' responsibility for payment of taxes and related expenses, the indemnification agreements still required Husband to reimburse her for her allocated share.

- 9 -

terms). The issue of whether a writing constitutes an integrated contract is a question of law. ***Murray v. University of Pennsylvania Hospital***, 490 A.2d 839 (Pa. Super. 1985). A contract is integrated if it represents a final and complete expression of the parties' agreement. ***McGuire v. Schneider, Inc.***, ***supra***. Where a contract purports to be a complete legal obligation without any doubt as to its object or extent, it is presumed to reflect the whole legal right of the parties. ***Id.***

***Lenzi v. Hahnemann University***, 664 A.2d 1375, 1379 (Pa. Super. 1995).

In this case, the 2011 order authorized the trial court to allocate, in its discretion, the parties' respective payment responsibilities for all taxes and related legal and accounting expenses for periods prior to, and including, 2010. On its face, the 2011 order reasonably appeared to be a complete agreement setting forth the allocation mechanism for determining the parties' respective responsibilities for payment of their taxes (and related legal and accounting expenses) for all periods prior to 2010, including 2004 and 2007. Hence, the trial court did not err in holding that the 2011 order constituted a complete and integrated agreement. ***Lenzi***, ***supra***.

We also agree that the 2011 order superseded the indemnification agreements. An integrated contract displaces prior, inconsistent agreements. ***McGuire***, ***supra***. Here, the indemnification agreements required Husband to reimburse Wife for taxes and expenses relating to the 2004 and 2007 returns. In contrast, the 2011 order allowed the court to allocate tax liabilities between the parties for all years up to, and including, 2010. As the trial court determined, these inconsistent provisions demonstrate that the 2011 order rewrote the parties' arrangement with

respect to their payment responsibilities for tax years 2004 and 2007. **See** Trial Court Opinion, 7/29/15, at 14. We discern no error in the trial court's conclusion that the 2011 order displaced the indemnification agreements.

Wife's claims on appeal do not lead us to a different conclusion. Initially, Wife argues that the absence of an integration clause and the lack of an express modification of the indemnification provisions render the 2011 order incomplete. However, the absence of an integration clause is not dispositive of whether a written agreement represents a final and complete expression of the parties' agreement. **Kehr Packages, Inc. v. Fidelity Bank, Nat. Ass'n**, 710 A.2d 1169, 1173 (Pa. Super. 1998). Moreover, so long as a writing demonstrates "a complete legal obligation without any uncertainty as to the object or extent of the engagement[,] it is conclusively presumed [to constitute] the whole engagement of the parties[.]" **Peugeot Motors of America, Inc. v. stout**, 456 A.2d 1002, 1008 n.12 (Pa. Super. 1983) (quotation omitted). The omissions cited by Wife do not show that the trial court erred in finding the 2011 order was an integrated agreement.

Wife's assertion that the 2011 order is not supported by consideration is also without merit. "A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 P.S. § 6. Since the parties signed the 2011

order, and since it contained an express statement that the parties intended to be legally bound by the stipulation, Wife cannot cite lack of consideration as grounds for invalidating that agreement.

Wife's next two claims allege that the trial court erred in ordering her to pay 6% statutory interest on her share of the taxes and related expenses. Specifically, Wife argues that interest payments on sums owed for 2004 and 2007 contravene the indemnification agreements. Wife also argues that she should not be ordered to pay interest on sums owed for tax years 2005 and 2006 since she offered to pay her share for those years prior to the commencement of this action. Wife reasons that if Husband had accepted her offer, he would not have needed to borrow funds to finance the payment relating to those tax years. Wife next argues that Husband failed to substantiate the actual interest he paid on funds borrowed from his J.P. Morgan home equity line of credit. Here, Wife points to testimony from Husband that calculation of the interest paid on funds borrowed from this account would be too complicated. Lastly, Wife argues that that the statute cited by the trial court, 23 Pa.C.S.A. § 3502(e)(3), that authorized an award of interest was inapplicable in this case since Wife did not fail to comply with an equitable distribution order and since she did not refuse to pay a sum certain owed under a contract. We find Wife's final claim dispositive and therefore vacate the trial court's order insofar as it awarded interest in favor of Husband and against Wife.

The trial court cited 23 Pa.C.S.A. § 3502(e)(3) as authority for awarding Husband interest on Wife's share of the parties' combined tax obligation. In relevant part, § 3502(e)(3) states:

**§ 3502. Equitable division of marital property**

(e) Powers of the court.--If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

(3) award interest on unpaid installments[.]

23 Pa.C.S.A. § 3502(e)(3).

Throughout this litigation, Husband's position has been that the 2011 order superseded the tax indemnification agreements for 2004 and 2007. The trial court agreed with this interpretation of the stipulated order and we have concurred in the trial court's assessment. As stated above, the 2011 order committed the parties' respective responsibilities for tax payments to the discretion of the trial court. As such, for purposes of fixing the parties' tax obligations, the discretion of the trial court supplanted the 55/45 distribution scheme previously set in place with respect to other facets of the parties' marital estate. Thus, pursuant to the new regime established by the 2011 order, both sides were free to seek the court's guidance in determining their respective obligations to make payments toward the resolution of their

tax deficiencies.[5]  Although the 55/45 split was likely to inform the trial court's exercise of discretion and foreshadow the ultimate allocation of the parties' respective tax burdens, this result was not a certainty and, more importantly, it was not included in any written contract dealing with the litigants' respective tax responsibilities.

For these reasons, we cannot agree with the trial court that Wife failed to comply with an equitable distribution order or any other definitive agreement between the parties concerning payment toward the New York tax deficiencies.  Accordingly, we hold that § 3502(e)(3) does not apply in these circumstances and we further conclude that Wife cannot be compelled to pay interest because she did not fail to pay a sum certain identified in a contract between the parties.  ***See Penneys v. Pennsylvania R. Co.***, 183 A.2d 544, 546 n.1 (Pa. 1962) (interest on the amount of a debt or monetary value of failed performance is allowable from the time performance was due where defendant breaches a contract to pay definitive sum of money or fails to render performance the value of which is ascertainable by mathematical calculation).  Because the payment deadline included in the trial court's April 23, 2015 order marked the first point at which we can say that Wife was

_____

[5] In our view, the trial court's discretionary pronouncement on April 23, 2015 marked the first juncture at which Wife's tax obligation became fixed for purposes of the 2011 order.  Moreover, the trial court's discretionary authority to resolve the parties' tax responsibilities extended to the date by which payment had to be made.

required to pay a definitive sum to Husband relative to her share of the parties' tax deficiency and related expenses under the 2011 order, we vacate the trial court's interest award to Husband.[6]

Wife's next three claims assert that the trial court abused its discretion in awarding Husband 45% of the legal and accounting fees incurred in defending the audits. Wife points out that the evidence submitted by Husband was not limited to tax years 2005 and 2006, in contravention of the indemnification agreements. She also argues that Husband's accountants and lawyers did not consult her and that Husband's evidence lacked sufficient detail to support reimbursement. Wife maintains that the amounts awarded for work performed by Jeri Sape (Husband's assistant) and Chrystal Oakham (the parties' accountant) were based upon speculative and unauthenticated documents prepared strictly for litigation. These claims merit no relief.

We previously held that the 2011 order superseded the indemnification agreements; hence, Wife's claim that Husband's evidence was not limited to tax years 2005 and 2006 is meritless. Additionally, our review of the record, including testimony relating to the efforts of Sape and Oakham, reveals sufficient detail supporting Husband's claim for reimbursement of legal and

---

[6] For these same reasons, we reject Husband's request for interest up to the date that Wife tendered full payment to the extent this request seeks interest payments prior to the payment deadline imposed by the trial court.

accounting fees and expenses incurred in defending the audits. Lastly, Wife's contention that Husband's accountants and lawyers did not consult her merits no relief given the demonstrable connection between the work performed and defense of the audits, Wife's general awareness of Husband's engagement with attorneys and accountants defending the audits, and Wife's concession that she relied upon Husband to handle the assessment proceedings.

Finally, both Husband and Wife requested fees and expenses incurred in litigating Husband's petition for special relief on grounds of dilatory, obdurate, and vexatious conduct. *See* 23 Pa.C.S.A. § 5339. After careful review, we agree with the trial court that neither litigant demonstrated that the opposing side's conduct warranted an award of counsel fees. Thus, we affirm this aspect of the trial court's order.

Order affirmed, in part, and vacated, in part. Case remanded. Jurisdiction relinquished.[7]

_____

[7] As a result of our disposition, Husband remains entitled to reimbursement from Wife for 45% of the tax settlement and 45% of the legal and accounting fees and expenses incurred in defending the New York audits. Husband is not entitled to reimbursement for legal and accounting fees and expenses incurred in litigating his petition for special relief or interest on any sum owed by Wife prior to the payment deadline ordered by the trial court. Wife is not entitled to legal fees and expenses incurred in defending Husband's petition.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/22/2016</u>