**RAGNAR BENSON, INC.**

v.

**The HEMPFIELD TOWNSHIP MUNICIPAL AUTHORITY.**

**Kirby Electric, Inc., Appellant**

v.

**Hempfield Township Municipal Authority and Ragnar Benson, Inc.**

Superior Court of Pennsylvania.

Submitted Oct. 30, 2006.

Filed Jan. 30, 2007.

Charles W. Robinson, Warrendale, for appellant.

Christopher R. Opalinski, Pittsburgh, for Ragnar, appellee.

Thomas M. Ferguson, Pittsburgh, for Hempfield Tp., appellee.

BEFORE: ORIE MELVIN, McCAFFERY, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Kirby Electric, Inc. (Kirby) appeals from an order granting the Hempfield Township Municipal Authority's (the Authority) motion to enforce a settlement agreement. Kirby contends that the trial court committed legal error when it determined that the parties' agreement was a settlement agreement and refused to admit documents under the parol evidence rule. Additionally, Kirby asserts that the trial court erred in finding that the settlement amount was established, paid, and received. We find no merit in any of

Kirby's contentions. Accordingly, we affirm the trial court's order.

¶ 2 This case arises out of two separate but subsequently consolidated civil actions filed in the Court of Common Pleas of Westmoreland County. Both cases arise from contract disputes that occurred during the expansion and renovation of the New Stanton Water Pollution Control Plant (the Project), which was owned by the Authority. Under separate written agreements, Kirby contracted with the Authority to perform the Project's electrical construction, while Ragnar Benson, Inc. (Ragnar) contracted with the Authority to perform the Project's general construction.

¶ 3 Following a disagreement between the contractors and the Authority that is not relevant for purposes of this appeal, Ragnar filed a complaint against the Authority. In its complaint, Ragnar asserted claims of breach of contract and sought reimbursement for extra costs that were allegedly incurred as a result of the Authority's failure to properly design a portion of the Project. In turn, the Authority asserted a counterclaim against Ragnar for breach of contract and liquidated damages for an amount exceeding $1,500,000.00.

¶ 4 On May 24, 2002, Kirby commenced a civil action against the Authority and Ragnar, seeking to hold both defendants liable in breach of contract for a total of $496,619.00. In its complaint, Kirby alleged that: the Authority owed it $20,000.00 for its complete performance under the contract (Count I); Kirby was entitled to damages from the Authority for disruption, delay and acceleration caused by Ragnar (Count II); and Kirby was entitled to damages from Ragnar for disruption, delay and acceleration caused by Ragnar (Count III). Kirby's Count III breach of contract claim against Ragnar was premised on the theory that it was a third-party beneficiary of the general construction contract between Ragnar and the Authority. In its Answer and New Matter, Ragnar joined the Authority as a third-party defendant and sought contribution and/or indemnity under Pa.R.Civ.P. 2252(d). Likewise, in its Answer and New Matter, the Authority joined Ragnar as a third-party defendant and sought contribution and/or indemnity under Pa.R.Civ.P. 2252(d). In addition, the Authority asserted a counterclaim against Kirby for attorney's fees and defense costs pursuant to their construction contract. On June 21, 2002, the trial court issued an order that consolidated Ragnar's claim against the Authority with Kirby's claims against the Authority and Ragnar.

¶ 5 In October 2003, Kirby and the Authority executed a Settlement and Release Agreement (Settlement Agreement) and agreed to settle their claims against one another, with the exception of Kirby's Count I, $20,000.00 claim against the Authority for completed contractual performance. In the Settlement Agreement, Kirby and the Authority agreed that: (1) Kirby would continue its litigation against Ragnar, (2) the Authority would remain a party to the suit, (3) the Authority would pay Kirby according to an inverse-ratio formula that was based on the amount of settlement or final judgment in the litigation between Kirby and Ragnar, and (4) each party would be permitted to enter unilaterally into a settlement with Ragnar. Specifically, under paragraph 2 of the Settlement Agreement, a declining scale set forth the Settlement Amount that the Authority would be obligated to pay Kirby, based upon the amount that Kirby recovered from Ragnar:

a) Should Kirby's actual recovery from Ragnar be zero, the settlement amount shall be $100,000.00.;

b) Should Kirby's actual recovery from Ragnar fall between zero and

$300,000.00, the settlement amount shall be reduced by thirty-three cents for every dollar of actual recovery;

c) Should Kirby's actual recovery from Ragnar exceed the sum of $300,000.00, the settlement amount shall be zero.

Settlement Agreement, 8/14/03, at 2 ¶ 2. Moreover, paragraph 11 of the Settlement Agreement, which relates to the parties' ability to settle unilaterally with Ragnar, provides as follows:

a) if the Authority alone settles with Ragnar, the Authority shall pay Kirby the sum of $100,000.00 simultaneously with the execution of any release between the Authority and Ragnar;

b) if Kirby alone settles with Ragnar for less than $200,000.00, the Authority owes Kirby nothing;

c) if Kirby settles with Ragnor for a sum in excess of $200,000.00, the Settlement Amount due and payable by the Authority shall be calculated in accordance with the declining scale . . .

d) if there is a "global settlement agreement," where all parties release each other from all claims that have been or should be asserted . . . , the Settlement Amount shall be calculated in accordance with the global settlement agreement.

Settlement Agreement, 8/14/03, at 9 ¶ 11.

¶ 6 Shortly after the execution of the Settlement Agreement, on October 23, 2003, Kirby filed a motion for summary judgment against Ragnar on the issues of liability and causation. In response, Ragnar filed a cross-motion for summary judgment on Kirby's claim against it, arguing, among other things, that Kirby was not an intended third-party beneficiary of the general construction contract between Ragnar and the Authority. On December 9, 2003, the Authority settled with Ragnar, and pursuant to paragraph 11(a) of the Settlement Agreement, simultaneously paid Kirby $100,000.00. On December 31, 2003, the trial court granted Ragnar's cross-motion for summary judgment against Kirby on the ground that Kirby was not an intended third-party beneficiary of the general construction contract, and thus, had no legal basis to sue Ragnar for breach of contract. Because the trial court entered summary judgment in favor of Ragnar, which resulted in Kirby obtaining a "zero" recovery from Ragnar, the Authority did not make any additional payment to Kirby under paragraph 2 of the Settlement Agreement. See Settlement Agreement, 8/14/03, at 2 ¶ 2(a).

¶ 7 Kirby then filed an "Emergency Motion for Pretrial Conference," alleging that the Settlement Agreement could not be construed as a conclusive resolution or final disposition of the case. Anticipating that Kirby would make an attempt to acquire more money from the Authority under the Settlement Agreement, the Authority filed a Motion to Enforce Settlement Agreement. By way of answer and opposition, Kirby asserted that the agreement between it and the Authority was not in fact a settlement agreement, but instead, was an unenforceable "Mary Carter" agreement. See Hammel v. Christian, 416 Pa.Super. 78, 610 A.2d 979, 986 (1992) (Cavanaugh, J., concurring) (stating that a Mary Carter agreement is a "secret agreement between a plaintiff and a co-defendant which gives the co-defendant incentive to support the plaintiff's case. The classic formulation is that the defendant agrees to remain in the action and will pay to the plaintiff a set amount regardless of the action's outcome, but the defendant's own liability will be diminished proportionally by increasing the liability of the other co-defendants."). Kirby also contended that the subject matter and the basis upon

which the Settlement Agreement's performance depended had been frustrated.

¶ 8 On August 31, 2005, the trial court held a hearing, and on September 2, 2005, the trial court entered an order granting the Authority's Motion to Enforce Settlement Agreement. In its opinion, the trial court decided that the parol evidence rule precluded Kirby from introducing evidence relating to the contract's subject matter and frustration of purpose, because the Settlement Agreement contained an integration clause and the proffered evidence would vary the terms of the Settlement Agreement. Trial Court Opinion (T.C.O.), 9/06/05, at 3–9. *See* Settlement Agreement, 8/14/03, at 12 ¶ 15 (Entire Agreement) ("The Parties understand and agree that this Agreement ... sets forth the entire Agreement between them[.]"). Moreover, the trial court concluded that the Settlement Agreement was clear and unambiguous and that under its express terms, the Authority was obligated to pay Kirby only $100,000. T.C.O, 9/06/05, at 9–10. The trial court reasoned that since the Authority paid Kirby $100,000 on December, 9, 2003, when it entered into the settlement agreement with Ragnar, and Kirby received a "zero" recovery from Ragnar, the Authority fully performed under the Settlement Agreement. T.C.O., 9/06/05, at 10. Accordingly, the trial court granted the Authority's Motion to Enforce Settlement Agreement.

¶ 9 On October 3, 2005, Kirby filed an Amended Notice of Appeal to this Court from the trial court's December 31, 2003 order granting summary judgment in favor of Ragnar and an Amended Notice of Appeal from the trial court's September 2, 2005 order granting the Authority's Motion to Enforce Settlement Agreement. On October 14, 2005, Ragnar filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. As a result of Ragnar's bankruptcy, this Court *sua sponte* dismissed both of Kirby's appeals by Order dated December 7, 2005. Kirby then obtained an Order from the bankruptcy court that allowed it to proceed with an appeal from the trial court's order granting the Authority's Motion to Enforce Settlement Agreement. The bankruptcy court, however, did not give Kirby permission to appeal the trial court's order granting summary judgment in favor of Ragnar, and Kirby is not challenging that entry of summary judgment in this appeal. On June 30, 2006, this Court entered an order that reinstated Kirby's appeal regarding the Authority's Motion to Enforce Settlement Agreement.

¶ 10 Kirby appeals to this Court, raising the following questions for our review:

1. Did the trial court err in giving the contested agreement the effect of a settlement where a co-defendant joined with plaintiff in an alliance against the other defendant, remained a party to the suit, and agreed to pay plaintiff according to an inverse-ratio formula based on the amount of the settlement or final judgment in the litigation between plaintiff and the non-allied defendant?

2. Did the trial court err in refusing to receive evidence offered, not for the purpose of varying the terms of a contested agreement, but to explain the contract, identify the subject matter, and apply the contract terms to the subject matter?

3. Where the contested agreement made the settlement amount fully dependent upon the amount of any settlement or final judgment in the litigation between the plaintiff and the non-allied defendant, did the trial court err in finding that the set-

tlement amount was established, paid, and received at a time when no settlement or final judgment existed from which to ascertain the allied defendant's level of liability under the Contested Agreement?

Brief for Appellant at 1–2.

■■■■ ¶ 11 "The enforceability of settlement agreements is determined according to principles of contract law." *Kramer v. Schaeffer*, 751 A.2d 241, 245 (Pa.Super.2000). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa.Super.2005) (citation omitted). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." *Id.* (citation omitted).

¶ 12 In its first question, Kirby contends that the Settlement Agreement "possessed fundamental features distinctly different from a traditional settlement." Brief for Appellant at 15. Particularly, Kirby cites *Hatfield v. Continental Imports, Inc.*, 530 Pa. 551, 610 A.2d 446 (1992), and asks this Court to determine "whether, under the *Hatfield* test, the [Settlement] Agreement is in fact a settlement or merely a Mary Carter type of agreement that settles nothing until the litigation between Kirby and Ragnar is forever put to an end by either settlement or a final judgment." Brief for Appellant at 15. Kirby further argues that "the trial court [does not] analyze or even acknowledge the existence of the applicable *Hatfield* decision[,]" and this provides a basis upon "which to conclude that the trial court failed to recognize the distinction between [the] *Hatfield* rule and the parol evidence rule." Brief for Appellant at 16. Therefore, according to Kirby, "the trial court misapplied the parol evidence rule, and in doing so, committed

reversible error by failing to pass on the merits of Kirby's properly raised issue." Brief for Appellant at 16.

¶ 13 After reviewing Kirby's brief, we are unable to fathom precisely what argument it is attempting to advance. As far as we can discern, Kirby's assertion of error is based on the assumption that *Hatfield* is applicable to this case, draws a distinction between Mary Carter agreements and settlement agreements, and requires the judge to admit evidence under the parol evidence rule. In *Hatfield*, our Supreme Court analyzed an agreement that settled a claim between a defendant and a plaintiff and provided for the reimbursement of money to the settling defendant if the plaintiff recovered a judgment or entered into a settlement with the non-settling co-defendant. *See* 610 A.2d at 448–49. The Court determined whether the agreement would be admissible at trial in order to prove the settling defendant's bias and financial interest in the plaintiff's success against the non-settling defendant, despite 42 Pa.C.S. section 6141, which prohibits the admission of certain settlement agreements at trial. *See id.* at 452. In determining whether the agreement at issue could be deemed a "settlement" under 42 Pa.C.S. section 6141, the Court stated: "For purposes of this opinion, whether the Agreement is characterized as a 'Mary Carter agreement' is of no moment. We are only concerned with whether agreements such as the one under consideration here, called by any name, are admissible into evidence." *Id.* at 449. As such, *Hatfield* does not differentiate between traditional settlement agreements and Mary Carter agreements, is not applicable to the facts of this case, and moreover, does not mention, let alone imply, the parol evidence rule. Therefore, we find no merit in Kirby's first question.

¶ 14 In its second question, Kirby asserts that the trial court erred in refusing to admit documents under the parol evidence rule. Brief for Appellant at 16. Specifically, Kirby sought to admit numerous letters that pre-dated the Settlement Agreement to show that the Authority and Kirby believed that Kirby's claim against Ragnar was cognizable. Brief for Appellant at 18. Kirby argues that this evidence should be admitted to explain the "true subject matter" of the Settlement Agreement, *i.e.*, that the Agreement was executory in nature and was intended to apply only if Kirby's claim against Ragnar proceeded through the trial stage. Brief for Appellant at 18.

¶ 15 In *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425 (2004), our Supreme Court provided a comprehensive review of the parol evidence rule:

Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. ... [U]nless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

[F]or the parol evidence rule to apply, there must be a writing that represents the "entire contract between the parties." ... An integration clause which states that a writing is meant to represent the parties' entire agreement is ... a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

854 A.2d at 436–37 (internal citations omitted). "Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." *Ferrer v. Trs. of the Univ. of Pa.*, 573 Pa. 310, 825 A.2d 591, 608 (2002) (citation omitted).

¶ 16 Here, the Settlement Agreement contains an integration clause stating that it "is the entire Agreement between [the parties]; that no promise or inducement has been made except as set forth herein; and that no representations or other agreements oral or otherwise, between them and not included herein shall be of any force or effect." Settlement Agreement, 8/14/03, at 12 ¶ 15. Kirby purported to introduce prior written statements to vary the term "actual recovery" in paragraph 2 of the Settlement Agreement to suggest that "recovery" means a judgment that is entered after a trial. *See* Settlement Agreement, 8/14/03, at 12 ¶ 2(a)-(c) ("Should Kirby's actual recovery from Ragnar ..."). The trial court concluded that "[i]f the parties intended that the settlement agreement was to take effect only in the event that Kirby's case against Ragnar proceeded through the trial stage, such a condition could and should have been expressly contained within the integrated settlement agreement." T.C.O., 9/06/05, at 8. The failure of Kirby to include a contingency limiting the application of the term "actual recovery" to those instances where judgment was entered at the conclusion of a trial renders the term silent, not ambiguous. *See Seven Springs Farm, Inc. v. Croker*, 748 A.2d 740, 744 (Pa.Super.2000) (*en banc*), *aff'd* 569 Pa. 202, 801 A.2d 1212 (2002) (stating that "when a contract fails to provide for a

specific contingency, it is silent, not ambiguous."). Therefore, we find that the Settlement Agreement is fully integrated, representing the entire contract between the parties, and that the term "actual recovery" is unambiguous. Because Kirby's evidence was proffered in order to vary the term "actual recovery," we conclude that the trial court did not err when it precluded the admission of Kirby's documents under the parol evidence rule. *See Lenzi v. Hahnemann Univ.*, 445 Pa.Super. 187, 664 A.2d 1375, 1379 (1995) ("If a written contract is unambiguous and held to express the embodiment of all negotiations and agreements prior to its execution, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of that contract.") (citations omitted).

¶ 17 As a corollary to its second question, Kirby argues that the Settlement Agreement is no longer enforceable under the doctrine of frustration of purpose. Brief for Appellant at 17. Kirby contends that "[o]wing to Ragnar's bankruptcy, the final curtain will never come down on the litigation between Kirby and Ragnar." Brief for Appellant at 17. Kirby asserts that the subject matter of the Settlement Agreement is frustrated because "the Authority's level of liability will never be resolved by a perfectly final and conclusive judgment not subject to appeal." Brief for Appellant at 17. Under the doctrine of frustration of purpose, "[w]hen people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is *prima facie* regarded as dissolved." *Hart v. Arnold*, 884 A.2d 316, 335 (Pa.Super.2005) (citation omitted). The Restatement (Second) of Contracts section 261 provides:

## Discharge By Supervening Impracticability

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981).

¶ 18 As noted *supra,* the Settlement Agreement's term "actual recovery" was not based on the contingency that Kirby's case against Ragnar be resolved by a judgment entered after a trial. Likewise, we conclude that Kirby's performance of seeking "actual recovery" against Ragnar was not frustrated or made dependent upon the prospect that it could file an appeal in order to contest the entry of summary judgment entered against it. The fact that Kirby may have had the summary judgment overturned on appeal exists in the realm of possibility only and was not "a basic assumption on which the contract was made[.]" *Id.* In short, Kirby had the opportunity to pursue "recovery" against Ragnar, and Kirby's performance under the Settlement Agreement was entirely within its own control. The trial court's entry of summary judgment in favor of Ragnar was a foreseeable and natural risk that Kirby assumed when it commenced this litigation. Accordingly, we reject Kirby's contention that the subject matter of the Settlement Agreement has been frustrated or that Kirby's performance has been rendered impracticable by a supervening event. Therefore, the trial court did not err when it denied Kirby relief on this basis.

¶ 19 In its third question, Kirby contends that the trial court erred in find-

ing that the Settlement Amount was established, paid, and received. Brief for Appellant at 21. In its opinion, the trial court made the following findings of fact and conclusions of law:

11. The amount of settlement owed by the Authority to Kirby, based upon Kirby's actual recovery against Ragnar of zero dollars is $100,000.00 pursuant to the Agreement.

12. The Authority paid and Kirby received the $100,000.00 (Hearing of 8/31/05, Stipulation of the parties.)

\* \* \* \*

The Agreement provides that the amount of settlement, based upon Kirby's actual recovery against Ragnar of zero dollars, is $100,000.00, which, in fact, as stipulated by the parties, has been paid. (Finding of Fact No. 12; Agreement, ¶ 2.) The Authority's Motion to Enforce Settlement is granted.

T.C.O, 9/06/05, at 4, 10 (cited in Brief for Appellant at 21). Kirby argues that the trial court's "conclusion of law is entirely incorrect[,]" because it never stipulated that the Authority, "pursuant to paragraph 2 of the Settlement Agreement, paid Kirby a 'Settlement Amount' of $100,000." Brief for Appellant at 22. Instead, Kirby contends that the parties stipulated that the Authority paid Kirby a "penalty" under paragraph 11(a) on December 9, 2003, simultaneous with the execution of its settlement agreement with Ragnar. Brief for Appellant at 23. Therefore, Kirby argues, "the trial court's implied finding that the Settlement Amount contemplated by paragraph[ ] 3 . . . was established, paid and received is at odds with both the facts and logic," because on December 9, 2003, no document existed from which to determine the Settlement Amount "and the litigation between Kirby and Ragnar was far from being forever put to an end[.]" Brief for Appellant at 23.

¶ 20 After reviewing the transcript of the August 31, 2005 hearing, we find that there is no testimony to support Kirby's contention that the parties stipulated that the Authority's $100,000 payment was a "penalty." Moreover, there is nothing in the Settlement Agreement that suggests the Authority's payment of $100,000 under paragraph 11(a) of the Settlement Agreement is a "penalty," and we decline to judicially insert such a term into the contract. *See Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 662 (1982) ("It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly.") (citation omitted). To the extent that Kirby argues the trial court's ruling is at odds with paragraph 3 of the Settlement Agreement, we find this claim to be equally unavailing. Paragraph 3 of the Settlement Agreement provides: "The Settlement Amount, as calculated in accordance with Paragraph 2 . . . shall be unconditionally due and payable on or before the expiration of 10 days from the date on which any judgment . . . becomes perfectly final and conclusive." Settlement Agreement, 8/14/03, at 3 ¶ 3. Here, the Authority paid Kirby $100,000 on December 9, 2003, well in advance of the due date or any final judgment. As these are the only arguments that Kirby sets forth in his brief, we find that Kirby has failed to sustain his burden of demonstrating that the trial court erred when it concluded that the Authority paid Kirby a Settlement Amount of $100,000. *See Miller v. Miller*, 744 A.2d 778, 788 (Pa.Super.1999) ("It is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law."). We recognize that under principles of contract interpretation, it is possible that

paragraphs 2 and 11 of the Settlement Agreement imposes upon the Authority two separate contractual obligations, each of which could be actionable for nonperformance. Kirby, however, does not raise this issue on appeal, and thus, we will not address it. *See Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174, 180 (1978) (stating that "an appellate court is not to raise sua sponte issue which it perceives in the record where, as here, those issues are not presented at the appeal level.") (citation omitted). Accordingly, we find that the arguments presented in support of Kirby's third question do not require this Court to reverse the trial court's order.

¶ 21 For the foregoing reasons, we affirm the trial court's order enforcing the Settlement Agreement.

¶ 22 Order **AFFIRMED.**