J-A22017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JANE B. O'MALLEY, AS ADMINISTRATOR - CTA OF THE ESTATE OF MICHAEL P. O'MALLEY, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | No. 193 WDA 2022 |
| JOHN T. CONWAY, INDIVIDUALLY, AND DAVID T. CONWAY, AS ADMINISTRATOR - CTA OF THE ESTATE OF JEFFREY T. CONWAY, DECEASED, AND AS CO-PARTNERS TRADING AS CONWAY, CONWAY & O'MALLEY, REAL ESTATE PARTNERESHIP; AND CONWAY, CONWAY, & O'MALLEY REAL ESTATE PARTNERSHIP | : : : : : : : : : : : : | |

Appeal from the Judgment Entered January 14, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):  No. 11297-2017

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.*

MEMORANDUM BY DUBOW, J.:                    **FILED: OCTOBER 31, 2022**

Appellant, Jane B. O'Malley as administrator of the estate of her deceased husband Michael P. O'Malley ("O'Malley"), appeals from the January 14, 2022 Order entered in the Erie County Court of Common Pleas granting summary judgment in favor of Appellees John T. Conway, David T. Conway as administrator of the estate of Jeffrey T. Conway ("the Conways"), and

_____

* Retired Senior Judge assigned to the Superior Court.

Conway, Conway & O'Malley Real Estate Partnership (the "Partnership") in this contract dispute. After careful review, we affirm.

The relevant facts and procedural history are as follows. In January 1988, O'Malley and the Conways formed the Partnership. Each partner held an equal 1/3 share in the Partnership.

In 1989, the partners agreed that the Partnership would provide recurring distributions to the partners to fund a $200,000 life insurance policy for each partner. The cost of the life insurance policy was $2,000 per year for each partner. Thus, each year thereafter, each partner had the ability to request a $2,000 distribution from the Partnership to fund the policy premium. O'Malley regularly received the $2,000 distribution from the Partnership to pay the premium on his policy. However, at some point, O'Malley allowed his $200,000 life insurance policy to lapse due to non-payment.

On April 4, 1992, the partners entered into a "Restated General Partnership Agreement of Conway, Conway & O'Malley Real Estate Partnership" (the Agreement). Relevant to the instant appeal, Article 9.01(a) of the Agreement, titled "Death of Partner," outlined the procedure for transfer of a partner's interest in the Partnership upon death through sale to the surviving partners. It provided as follows:

> **On the death of any Partner**, the Partnership business shall continue. At that time, **the surviving partners shall have the right to purchase the interest of the deceased partner from the deceased partner's estate by paying to said estate the sum of one dollar ($1.00)**. The partners agree that this is the fair method of purchasing said deceased Partner's interest, based upon various factors, including, but not limited to, the

contemplation of the Partners to purchase life insurance for the benefit of each Partner's beneficiaries; in any event, each Partner, intending to be legally bound, does hereby so agree to the provisions of this Paragraph and this Agreement for himself, his heirs, executors, administrators, and assigns.

Agreement, 4/2/92, at Art. 9.01(a) (emphasis added).

After the partners entered into the Agreement, they decided to purchase another $200,000 life insurance policy for each partner, funded by the partnership but purchased by the partners individually. From 1992, each partner received quarterly distributions of over $500 to pay the policy premiums.

O'Malley died on May 8, 2015. Following his death, and in accordance with Article 9.01(a) of the Agreement, the Conways offered Appellant $1.00 to purchase O'Malley's partnership interest. Appellant rejected the Conways' offer.

On December 6, 2017, Appellant filed the instant lawsuit seeking an accounting to establish the fair market value of O'Malley's interest in the Partnership and compel payment of that amount by the Conways to purchase O'Malley's interest. Appellant also asserted claims of Conversion, Unjust Enrichment, and a demand for equitable relief.

On January 9, 2018, the Conways filed an Answer and New Matter. They also filed a Counterclaim for Breach of Contract against Appellant for her failure to sell O'Malley's partnership interest for $1.00 as provided in Article 9.01(a) of the Agreement. Appellant filed a reply to the New Matter and Counterclaim on February 28, 2018, denying, among other things, that the

Agreement required that she sell O'Malley's partnership interest to the Conways for $1.00. Rather, she asserted that the Agreement only required Appellant to sell O'Malley's partnership interest to the Conways for $1.00 if the Partnership provided O'Malley's beneficiaries with the proceeds from O'Malley's life insurance policy that the Partnership had funded, which she alleged it had not.

On August 2, 2021, the Conways filed a Motion for Summary Judgment. The Conways argued that the plain language of the Agreement required Appellant to sell O'Malley's partnership interest to them for $1.00 and that, therefore, they were entitled to judgment as a matter of law.

On August 23, 2021, Appellant filed an Answer to the motion arguing that the Agreement is ambiguous and that, in order to ascertain the intent of the parties, the court must interpret the "entirety of Article 9 [of the Agreement] and the applicable terms of the entire contract [] along with the Uniform Partnership Act of 1988."[1] She concluded that, after considering Article 9 of the Agreement together with Article 12,[2] she was entitled to "have the value of [] O'Malley's interest in the [P]artnership at the date of dissolution

_____

[1] Answer to Motion for Summary Judgment, 8/23/21, at ¶ 26.

[2] Article 12.03, titled "Procedure for Appraisal," provides the procedure for determining the purchase price to be paid for the interest of a partner when "an appraisal of the value of an interest in the Partnership **is required** under any provision of this agreement[.]" Agreement Art. 12.01 (emphasis added).

- 4 -

valued and paid to her[.]"[3]  She also asserted that she did not receive any insurance proceeds as contemplated by the Agreement and, thus she was not required to sell O'Malley's interest in the Partnership to the Conways for less than fair market value and that the Conways' interpretation of the Agreement is "not fair."[4]

Following a hearing, on January 14, 2022, the trial court granted the Conways' Motion for Summary Judgment and dismissed Appellant's claims.

This appeal followed.  Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement.  The trial court filed a statement in lieu of a Rule 1925(a) opinion referring this Court to its January 14, 2022 opinion for discussion of Appellant's issues.

Appellant raises the following issue on appeal:

> Does a genuine issue of material fact barring the grant of summary judgment exist as to whether the partners intended $1.00 to be the total compensation paid to [Appellant] for the partnership of her deceased husband, [O'Malley]?

Appellant's Brief at 4.

**A.**

Appellant challenges the trial court's order granting summary judgment in favor of the Conways.  Our Supreme Court has clarified our role as the appellate court as follows:

---

[3] Appellant's Brief in Opposition to the Conways' Motion for Summary Judgment, 8/23/21, at 13.

[4] *Id.* at ¶ 30.

On appellate review[ ], an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citations and quotation omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Id.*** (citation omitted); ***see also*** Pa.R.C.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." ***Summers***, 997 A.2d at 1159. "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." ***Id.*** (citation and internal quotation marks omitted).

**B.**

Appellant asserts that the trial court erred in granting summary judgment in favor of the Conways because a genuine issue of material fact exists as to whether the partners intended to require Appellant to sell O'Malley's partnership interest to the Conways for $1.00 upon O'Malley's

death, or whether the Agreement requires an assessment of O'Malley's interest's fair market value. Appellant's Brief at 17-18.

To resolve this dispute, we must interpret the Agreement between O'Malley and the Conways to determine the parties' intent. Because contract interpretation is a question of law, our standard of review is *de novo*, and the scope of review is plenary. ***Ragnar Benson Inc. v. Hempfield Twp. Mun. Auth.***, 916 A.2d 1183, 1188 (Pa. Super. 2007).

Our Supreme Court has set forth the principles governing contract interpretation as follows:

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. . . . While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

***Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 468-69 (Pa. 2006) (citations omitted).

Appellant provides three arguments in support of her claim that the trial court erred in finding that she was not entitled to a fair market value appraisal of O'Malley's interest.

First, Appellant argues that the trial court failed "to give proper deference to the Supreme Court's decision" in ***Cerceo v. DeMarco***, 137 A.2d 296 (Pa. 1958), which she asserts "mandates that the inference to be drawn is that the partners did not intend to gamble their decades-long investment

on which partner would enjoy the longest lifespan." Appellant's Brief at 11-12. Analogizing the instant facts to those in **Cerceo**, Appellant argues that because the partners here provided in the Agreement for "an insurance arrangement by which fair compensation would be paid in exchange for the transfer of [a] deceased partners' interest," and because Appellant did not receive any proceeds from an insurance policy on O'Malley's life, it is "tantamount to forfeiture to the Conways of the entire value" of O'Malley's interest for her to sell O'Malley's partnership interest for $1.00 as required by the terms of Article 9.01. Appellant's Brief at 24-25.

In **Cerceo**, two partners entered into a partnership agreement that contained a provision providing that the partnership would pay the premiums on life insurance policies purchased by the partners. **Cerceo**, 137 A.2d at 297. The agreement also provided that, in consideration for the partnership making the premium payments, upon the death of either partner, the deceased partner's partnership interest would pass to the surviving partner.[5] **Id.** The partners never took out insurance policies on each other's lives as provided in the agreement. **Id.** Upon the death of one partner, the executrix of his estate demanded an accounting of the decedent's interest in the

---

[5] The agreement in that case provided, *inter alia*, as follows: "Partners agree that they **will** each take out insurance upon their respective lives . . . . The premiums to carry said insurance **shall be paid for** by the partnership . . . . It is hereby expressly agreed . . . that **as consideration for the payment of the premium by the partnership** . . . upon the death of either partner . . . the entire partnership business . . . shall go to and become the absolute property of the survivor[.]" **Id.** (emphasis added).

partnership. *Id.* The surviving partner refused, and the executrix brought suit. *Id.*

In interpreting the partnership agreement, our Supreme Court determined that the agreement unambiguously required the payment of the life insurance premiums by the partnership as a precondition to the right of the surviving partner to acquire the deceased partner's interest. *Id.* at 298. Therefore, because the partnership did not make the premium payments on the deceased partner's life insurance policy as required by the agreement, the Court held that the surviving partner did not automatically acquire the deceased partner's interest and the surviving partner, thus, had a duty to provide the executrix with an accounting. *Id.*

Here, the trial court determined that *Cerceo* is distinguishable from the instant case, opining that, unlike the agreement in *Cerceo*, the Agreement did not require the Partnership to purchase insurance or make premium payments as a condition precedent to the purchase of O'Malley's interest for $1.00. Trial Ct. Op. 2/14/22, at 8. We agree. Further, we observe that, with respect to life insurance, the Agreement merely noted that "the contemplation of the Partners to purchase life insurance for the benefit of each Partner's beneficiaries" was one of numerous factors the partners considered in determining that $1.00 was a "fair method of purchasing said deceased Partner's interest[.]" Agreement at Art. 9.01. The provision of life insurance was not, as in *Cerceo*, a mandatory precondition to the Conways purchasing

O'Malley's interest for $1.00. Accordingly, Appellant's claim that the trial court erred in declining to apply the holding in **Cerceo** fails.

Next, Appellant argues that the provisions of the Agreement, in general, including Article 4 ("Contributions to Partnership"), Article 5 ("Profits, Losses, and Liabilities"), and Article 13 ("Termination of the Partnership"), and, in particular, Article 12 ("Procedure for Appraisal"), when read "as a whole" evidence the partners' intent to pay fair compensation for the purchase of a deceased partner's interest. Appellant's Brief at 22-25. She acknowledges that the language of Article 9 reflects the partners' agreement that a payment of $1.00 to a deceased partner's estate is the "fair method of purchasing said deceased Partner's interest," but argues that this language is evidence only of the partners' concern for fairness and not of their intent to fix the purchase price of $1.00. **Id.** at 24-25 (citing Agreement at Art. 9.01).

Last, Appellant argues that, pursuant to the Uniform Partnership Act, she is entitled to the fair market value of O'Malley's interest in the partnership. **Id.** at 20 (citing, *inter alia*, 15 Pa.C.S. § 8341).[6]

The trial court explained that it granted the Conways' motion for summary judgment because the Agreement clearly and unambiguously provided that the Partnership would continue on the death of any partner following which the surviving partners had the right to purchase the deceased

---

[6] 15 Pa.C.S § 8341 was in effect at the time the partners entered into the Agreement and at the time of O'Malley's death. In 2017, the legislature repealed it and replaced it with 15 Pa.C.S. § 8441.

partner's interest for $1.00. Trial Ct. Op. at 5 (citing Agreement at Art. 9.01). The trial court rejected Appellant's argument that it must look beyond the plain language of the Agreement to the "default rules" found in the Uniform Partnership Act, aptly noting that the Act "applies only in the absence of a partnership agreement addressing the effect of the death of a partner on continuation of the business." *Id.* at 5, 7. Here, Article 9 of the Agreement clearly addresses the effect of O'Malley's death on the continuation of the Partnership.

Importantly, the court also found that the language of Article 9.01 was clear and unambiguous as to the Conways' right to purchase O'Malley's interest for $1.00. *See id.* at 7 (explaining that the "Partners agreed to the terms for determining and purchasing a deceased Partner's interest in Article 9.01 of the Partnership Agreement[.]"). We agree.

Following our *de novo* review, we likewise conclude that the plain language of the Article 9.01 is clear and unambiguous as to the parties' intent with respect to the process of transferring the Partnership interest of a deceased partner. In addition, our review confirms that the other articles of the Agreement to which Appellant refers are irrelevant to any consideration of this issue as they do not pertain in any way to this process. The Agreement, therefore, clearly and unambiguously required Appellant to sell O'Malley's interest to the Conways for $1.00 as provided in Article 9.01. Accordingly, we conclude that the trial court did not err in determining that no genuine issue

of material fact existed and that the Conways were entitled to judgment as a matter of law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/31/2022