J-A28032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN J. PETROCI, III, INDIVIDUALLY AND AS A SHAREHOLDER OF DUMOND CHEMICALS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NORMAN CHANES, DUMOND CHEMICALS, INC., DUMOND, LLC AND SUNRISE INVESTMENT CAPITAL, LLC | : | No. 348 EDA 2022 |
| ************ | : | |
| DUMOND CHEMICALS, INC. | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHN J. PETROCI, III | : | |
| | : | |
| | : | |
| APPEAL OF: NORMAN CHANES, DUMOND CHEMICALS, INC., DUMOND, LLC AND SUNRISE INVESTMENT CAPITAL, LLC | : | |

Appeal from the Order Entered December 17, 2021
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2017-08865-CT,
2017-09954-MJ

| | | |
|---|---|---|
| JOHN J. PETROCI, III, INDIVIDUALLY AND AS A SHAREHOLDER OF DUMOND CHEMICALS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NORMAN CHANES, DUMOND CHEMICALS, INC., DUMOND, LLC | : | No. 349 EDA 2022 |

J-A28032-22

AND SUNRISE INVESTMENT          :
CAPITAL, LLC                    :
************                    :
DUMOND CHEMICALS, INC.          :
                                :
                                :
          v.                    :
                                :
                                :
JOHN J. PETROCI, III            :
                                :
                                :
APPEAL OF: NORMAN CHANES,        :
DUMOND CHEMICALS, INC.,          :
DUMOND, LLC AND SUNRISE          :
INVESTMENT CAPITAL, LLC          :


Appeal from the Order Entered December 17, 2021
In the Court of Common Pleas of Chester County
Civil Division at No(s):  2017-08865-CT,
2017-09954-MJ

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED AUGUST 8, 2023**

Norman Chanes ("Chanes"), Dumond Chemicals, Inc., Dumond, LLC, and Sunrise Investment Capital, LLC (collectively "the Dumond Parties"), appeal from the order denying their motion to dissolve the purported settlement agreement reached with John J. Petroci, III ("Petroci"), individually and as shareholder of Dumond Chemicals, Inc.  We affirm.

This appeal arises from two actions filed in 2017 in the Chester County Court of Common Pleas following Petroci's termination from his position as president and chief executive officer of Dumond, Chemicals Inc., a New York

- 2 -

J-A28032-22

corporation headquartered in Chester County.[1] The first action, filed at Docket No. 2017-08865, was initiated by Petroci against the Dumond Parties,[2] and asserted claims for breach of fiduciary duty, corporate opportunity, breach of contract, unjust enrichment, misappropriation, and conversion.[3] The second action, filed at Docket No. 2017-09954, was initiated by the Dumond Parties against Petroci, and asserted claims for breach of contract, fraudulent

_____

[1] Dumond Chemicals, Inc. has since changed its name to Dumond, Inc. However, to avoid confusion, we will refer to the entity as Dumond Chemicals, Inc., which is the name it was called throughout the relevant time period.

[2] Chanes has owned Dumond Chemicals, Inc., either in whole or in part since he founded it in 1981. Dumond, LLC is a Delaware limited liability company. Sunrise Investment Capital, LLC is a Delaware limited liability company and the eighty percent owner of Dumond, LLC. Chanes and his companion, Ronnie D. Shapiro, each own fifty percent of Sunrise Investment Capital, LLC.

[3] Petroci sought to recover unreimbursed business expenses and unpaid loans he made to Dumond Chemicals, Inc, which he claimed totaled $370,000. Petroci also sought damages based on the value of his twenty percent of the stock in Dumond Chemicals, Inc., which he valued in excess of $2,200,000. Petroci asserted a derivative shareholder claim for business losses allegedly caused by Chanes's breach of fiduciary duty, usurpation of corporate opportunities, and self-dealing in the amount of $1,280,000. According to Petroci's averments, Chanes engaged in various schemes to diminish the value and profitability of Dumond Chemicals, Inc. by: improperly forcing the company to pay him royalties for the sale of company products for which he did not acquire a license; improperly forcing the company to pay unearned marketing fees to a company owned by Shapiro—which payments were funneled directly to Chanes; and using his other companies to sell Dumond Chemical, Inc.'s products at below-market rates, without making any payment for the products, and requiring Dumond Chemicals, Inc. to write off those sales as bad debt or for marketing purposes while Chanes retained the sale profits. Petroci claimed that he confronted Chanes regarding these improper practices and that Chanes terminated him in a transparent effort to confiscate his stocks.

- 3 -

inducement, conversion, fraud, breach of fiduciary duty, unjust enrichment; alternative claims of replevin and conversion; and sought an accounting and injunctive relief.[4]

The trial court consolidated the actions and the matter proceeded to a jury trial before the Honorable William P. Mahon in April 2021. During a recess on the third day of trial, the parties engaged in settlement negotiations and reached a verbal settlement agreement. The trial court requested that the parties place the terms of the agreement on the record. Counsel for Petroci indicated that, pursuant to the agreed-upon settlement terms, Dumond Chemicals, Inc. would pay Petroci a total of $3,600,000, which payment would be personally guaranteed by Chanes. *See* N.T., 4/8/21, at 2. The parties agreed that the total settlement payment to Petroci would be made in installments over the course of four years: $750,000 payable by July 1, 2021; $250,000 payable by December 31, 2021; and the remaining $2,600,000 to be paid in four installments (of $650,000), each due on December 31 of the year, with the first payment due on December 31, 2022, the second payment due on December 31, 2023, the third payment due on December 31, 2024,

---

[4] The Dumond Parties claimed that Petroci used a company-issued credit card to make $150,000 in personal purchases, and additionally charged Dumond Chemicals, Inc. for, among other purchases, precious stones, and sports memorabilia. The parties jointly valued the disputed items at $161,168.91. Ultimately, the trial court issued a preliminary injunction, and the disputed items were placed in a storage unit jointly controlled by the parties pending resolution of the litigation.

and the final payment due on December 31, 2025. *Id*. at 2-3. Any outstanding balance on these payments would be subject to a simple interest of four percent. *Id*. at 3. In exchange, Petroci would relinquish any right, claim, title, or interest in any stock or ownership of Dumond Chemicals, Inc., and Dumond, LLC. *Id*. Further, the precious stones, sports memorabilia, and other disputed items placed in the storage unit would become the sole property of Petroci. *Id*. Regarding the manner in which the payments would be treated for tax purposes, the parties indicated that tax experts would need to be consulted; however, they represented to the trial court that the "parties would work together "in good faith" "to determine the best lawful tax treatment of the settlement." *Id*. The parties also represented to the trial court that they would draft a formal written settlement agreement that would include: (1) a release of all claims of the litigants and their affiliates; (2) a confidentiality provision; (3) a no disparagement provision; (4) a no admission of liability provision; and (5) "other items that are frequently in cases involving business divorce, termination issues." *Id*. at 4. The parties further agreed that Chanes would give a reference for Petroci to future prospective employers. *Id*. The parties agreed that there would be a provision in the settlement agreement regarding remedies in the event of a breach of the agreement by either party. *Id*. at 8. Finally, Dumond Chemicals, Inc. would take out a life insurance policy on Chanes in an amount sufficient to cover the full balance of the settlement payment to Petroci, with the amount of the

policy to decline over time as settlement payments are made to Petroci. *Id*. at 13. Dumond Chemicals, Inc. would be the owner of the policy, and the beneficiary, in the event of Chanes's death, would be Petroci. *Id*. The parties agreed that the cost of the insurance policy would be born equally by the parties. *Id*. at 14. Both Chanes and Petroci agreed to the terms of the settlement on the record and thanked Judge Mahon for his time and assistance. *Id*. at 8-9, 14-15. After these on-the-record representations, the trial court dismissed the jury. Petroci then took possession of the disputed items in the storage unit.

The parties thereafter attempted to agree on a written settlement agreement and submitted competing drafts of a settlement agreement. Ultimately, they reached an impasse regarding several terms that were not stated on the court record, but which the Dumond Parties insisted be included in the settlement agreement. Specifically, the Dumond Parties insisted that the $3,600,000 in settlement payments be treated as "wages" to Mr. Petroci for tax purposes. The Dumond Parties also insisted that the written settlement agreement include a provision which rendered Dumond Chemicals, Inc.'s obligation to pay the settlement amount voidable if any of its lenders objected to the settlement payment for any reason. The Dumond Parties further insisted that the settlement agreement include a three-year non-compete provision. The Dumond parties additionally insisted on a provision which permitted Dumond Chemicals, Inc. to reduce its payment obligations to

Petroci by $1,100,000 by making an early payment. The Dumond Parties also sought to include terms regarding requested representations, assurances to lenders, trade secrets, proprietary information, and dispute resolution. Mr. Petroci refused to accept these additional terms.

In October 2021, the Dumond Parties filed a motion to dissolve the purported settlement.[5] On December 17, 2021, the trial court entered an order denying the motion and directing the prothonotary to mark the matter as settled on both dockets. On December 23, 2021, the trial court entered a praecipe to enter judgment in favor of Petroci and against the Dumond Parties at both dockets. The Dumond Parties filed timely notices of appeal,[6] and both they and the trial court complied with Pa.R.A.P. 1925.

The Dumond Parties raise the following issues for our review:

1. Was a purported settlement enforceable when the parties agreed to certain terms of the settlement while expressly leaving material terms open, and, in one case, represented that outside expertise was necessary?

2. May a trial court summarily deny a motion to revisit a purported settlement agreement when there are material disputes of fact and a party has requested limited discovery or an evidentiary hearing?

Dumond Parties' Brief at 4.

---

[5] The Dumond parties also filed a motion for recusal of Judge Mahon, which the trial court denied.

[6] The Dumond Parties separately appealed from the order denying their motion for recusal and the praecipe entering judgment against them. Those appeals were dismissed as duplicative of the instant appeal.

- 7 -

The first issue raised by the Dumond Parties pertains to the enforceability of the settlement agreement reached between the parties. The enforceability of settlement agreements is determined according to principles of contract law. *See Mazella v. Koken*, 739 A.2d 531, 536-37 (Pa. 1999). Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. *See Ragnar Benson, Inc. v. Hempfield Township Mun. Auth*., 916 A.2d 1183, 1188 (Pa. Super. 2007). Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary, as this court may review the entire record in making its decision. *Id*.

With respect to factual conclusions, the intent of the parties is a question of fact which must be determined by the factfinder. *See Johnston v. Johnston*, 499 A.2d 1074, 1076 (Pa. Super. 1985). A reviewing court must defer to the findings of the trier of the facts if they are supported by the evidence. *Id*. We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. *See Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. 2002).

As this Court has explained:

> The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless.

*Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 518 (Pa. Super. 2007) (internal citations and quotation marks omitted).

Where a settlement agreement contains all of the requisites for a valid contract, a court **must** enforce the terms of the agreement even if the terms of the agreement are not yet formalized in writing. **See id**.; **see also Johnston**, 499 A.2d at 1076 (holding that, if the parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date); **Wolf v. CONRAIL**, 840 A.2d 1004, 1006 (Pa. Super. 2003) (holding that a settlement agreement, entered verbally before the trial judge, that expresses the intention of the parties to settle the case for an agreed amount of money is valid and binding despite the absence of any writing or formality); **Mazella**, 739 A.2d at 536 (holding that "[e]ven the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the oral agreement was enforceable"). "A settlement will not be set aside absent a clear showing of fraud, duress or mutual mistake." **Rago v. Nace**, 460 A.2d 337, 339 (Pa. Super. 1983).

The Dumond Parties claim that the settlement reached in open court is not enforceable because there was no meeting of the minds on numerous essential terms. The Dumond Parties claim that the tax treatment for the settlement payments was an essential term and, because they indicated to the trial court on the record that they would need to consult with tax experts,

there was no meeting of the minds on this unresolved material term. The Dumond Parties also point out that Petroci was given the stock at the inception of his tenure with the company in exchange for his faithful service to the company. They claim that, since Petroci did not pay for the stock, it makes sense that the stock be characterized as "wages" for his services.

The Dumond Parties additionally claim that there were numerous other essential and material terms that they informed the trial court they would need to discuss and resolve (or within the umbrella of the terms they identified, such terms commonly included in a business divorce), including terms regarding requested representations, assurances to lenders, trade secrets, proprietary information, dispute resolution, and cure period. They argue that because the parties could not resolve these additional terms, there was no meeting of the minds and, therefore, no settlement to enforce.

The trial court considered the Dumond parties' first issue and concluded that it lacked merit. The court reasoned:

> . . . The parties before the undersigned were faced with the immediate resumption of a jury trial and[,] as such, time was of the essence in settling the case. Even though the agreement placed on the record may have been in outline form, the essential terms of the agreement were consented to by the parties, on the record, intending themselves to be mutually bound by those terms. The fact that they could not achieve a written document that all parties would sign after six plus (6+) months is not controlling. What is controlling is that [Petroci] agreed to relinquish his twenty percent (20%) stock ownership in Dumond [Chemicals, Inc.] and Dumond, LLC in exchange for payment from Dumond [Chemicals, Inc.] of $3.6 million and return [to Petroci] of all the esports memorabilia and precious metals in Dumond [Chemicals, Inc.]'s possession in a storage facility. The obligation

- 10 -

of Dumond [Chemicals, Inc.] would be personally guaranteed by . . . Chanes. There would be a $1 million payment by December 31, 2021 ($750,000 by July 31, 2021[,] and $250,000 by December 31, 2021) with the remaining balance being paid over the course of four (4) years by December 31 of each year. There would be a four percent (4%) interest on any outstanding balance. There would be a confidentiality provision about the agreement (which has been waived by [the Dumond Parties] by pursuing this relief) as well as no disparagement among the parties. There would be no admissions of liability. In addition, the parties would agree on reference language on any inquiries made by potential or prospective employers of . . . Petroci and that the settlement funds would be secured by a life insurance policy on . . . Chanes. The value of the policy would decrease as payments were made[,] and the premium for the life insurance policy would be equally shared by Dumond [Chemicals, Inc.] and Petroci. The parties assented on the record to these terms.

[The Dumond Parties] now suggest that there was no meeting of the minds with respect to issues of how the payments would be treated for tax purposes and "other items that are frequently in cases involving business divorce, termination issues." These issues are not essential to the formation of the contract to settle this litigation. The parties can deal with the tax consequences of the payments as they see fit in declaring them with the Internal Revenue Service. However, the settlement is clear that the payments to Petroci are for his ownership interests in Dumond [Chemicals, Inc.], Dumond, LLC[,] and Dumond, Inc. a successor to Dumond [Chemicals, Inc.]). At the time of the settlement, Petroci was not an employee of any of these entities. As to the "other items" frequently addressed in business divorces, as well as the reference language, those terms are not sufficiently articulated on the record and are not essential or material terms to the settlement agreement. This holds true for the tax implications of the payments as well.

Trial Court Order, 12/17/21, n.1 (page 4) (unnecessary capitalization and citations to the record omitted).

After careful review of the certified record, we conclude that the trial court's determination that a binding and enforceable settlement agreement

was reached by the parties is amply supported by the record. The parties manifested their assent to the terms of the settlement agreement and stated the material terms of that agreement on the record in open court. Specifically, the parties agreed to: the settlement amount; the dates of payment of the settlement amount by Dumond Chemicals, Inc. to Petroci; interest to accrue on any late payments; the surrender of company stock by Petroci; that Petroci would take possession of the disputed items; a confidentiality provision; a no disparagement provision; a no admission of liability provision; a reference from Chanes to prospective employers; and a life insurance policy on Chanes to secure the settlement payments. Indeed, both Chanes and Petroci stated their agreement to the terms of the settlement and profusely thanked Judge Mahon for his time and assistance. *See* N.T., 4/821, at 8-9, 14-15. Moreover, based on the parties' clear manifestation of assent to the terms of this settlement agreement, the trial was terminated, the jury was discharged, the litigation was suspended, and Petroci took possession of the disputed items. Thus, the Dumond parties' claim that there was no meeting of the minds that a settlement of the litigation had, in fact, occurred rings hollow.

In short, there was an offer by Dumond Chemicals, Inc. (the settlement figure), acceptance of the offer by Petroci, and consideration (in exchange for the parties terminating their lawsuits, Dumond Chemicals, Inc. would pay Petroci the agreed upon sum of $3,600,000). *See Mastroni-Mucker*, 976 A.2d at 518 (explaining that, where there is an offer, acceptance, and

- 12 -

consideration, a settlement agreement will be enforced). That the Dumond Parties may now regret the agreed-upon terms of the settlement agreement is of no consequence. *See Pennsbury Vill. Assocs., LLC v. McIntyre*, 11 A.3d 906, 915 (Pa. 2011) (holding that "[h]owever improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case"). Therefore, as the Dumond Parties do not allege fraud, accident or mutual mistake, we discern no error or abuse of discretion on the part of the trial court in denying the motion to dissolve the settlement agreement. *See id*. at 914 (stating that "[a] settlement agreement will not be set aside absent a clear showing of fraud, duress, or mutual mistake"). Accordingly, The Dumond Parties' first issue warrants no relief.

In their second issue, the Dumond Parties contend that the trial court was required to conduct an evidentiary hearing prior to ruling on its motion to dissolve the settlement agreement. In matters of contested settlement agreements, an evidentiary hearing into the existence and binding effect of a settlement agreement is the appropriate procedure to be followed. *See Limmer v. Country Belle Cooperative Farmers*, 286 A.2d 669, 670 (Pa. Super. 1971) (remanding for an evidentiary hearing where the record did not establish the date on which the settlement offer was made to the plaintiff, the exact content of the offer, the manner in which it was presented to the plaintiff, and the time, manner and circumstances surrounding the acceptance

by the plaintiff); *see also Christian v. Allstate Ins. Co.*, 502 A.2d 192, 194 (Pa. Super. 1985) (vacating the trial court's order granting a petition to enforce an out-of-court settlement agreement, which one of the parties denied was ever reached, where the trial court did not hold an evidentiary hearing and instead made findings of fact, without a record, concerning disputed issues); *Houston-Starr Co. v. Virginia Manor Apts., Inc.*, 440 A.2d 613, 615 (Pa. Super. 1982) (holding that the trial court erred in entering the order vacating a disputed settlement agreement without first conducting an evidentiary hearing and making findings of fact concerning the terms of the settlement agreement). Furthermore, a party's failure to request an evidentiary hearing is not dispositive of the case, as it is for the trial court to hold a hearing on the existence of the settlement as a matter of judicial procedure. *See Christian*, 502 A.2d at 194.

In support of their argument, the Dumond parties rely on *Christian*, wherein this Court held:

> Where the pleading raises an issue of fact relative to a purported settlement, the trial court must conduct an evidentiary hearing; and where the court fails to do so, its failure is not waived by a party's failure to object. The court may be required to determine if an offer to settle was tendered, if it was accepted, if counsel had authority to act, the terms of the settlement and possibly other matters.

*Id*. at 194. The Dumond parties claim that the status and nature of Petroci's interest in Dumond Chemicals, Inc. was not resolved by the parties, and the trial court left this dispute and other material disputes unresolved. *See*

Dumond Parties' Brief at 42. On this basis, the Dumond Parties request a remand for the trial court to conduct an evidentiary hearing.

Based on our review of the record, we conclude that an evidentiary hearing was not warranted in this matter. The on-the-record testimony of the parties and their counsel clearly establish an offer by Dumond Chemicals, Inc. (the settlement figure), acceptance of the offer by Petroci, and consideration (in exchange for both parties terminating their lawsuits, Dumond Chemicals, Inc. would pay Petroci the agreed upon sum of $3,600,000). The Dumond Parties cite no case, rule, or statute requiring that a trial court conduct an evidentiary hearing prior to ruling on a motion to dissolve a settlement agreement where, as here, there is no dispute that an offer to settle was tendered, it was accepted, and the record contains the material terms of the settlement and the parties' acquiescence. *Cf*. ***Christian***, 502 A.2d at 194 (noting the need for an evidentiary hearing where an ***insufficient*** record exists for appellate review of a settlement agreement); ***see also Mastroni-Mucker***, 976 A.2d at 518 (explaining that, where there is an offer, acceptance, and consideration, a settlement agreement will be enforced). Thus, as the record establishes an enforceable settlement agreement, there was no issue of fact regarding the agreement which required an evidentiary hearing. Accordingly, the Dumond Parties' second issue merits no relief.

Judgments affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/8/2023