J-S44028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JIGNESH PATEL, AND JAYVIRAJ, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIT R. PATEL, AND RITESH PATEL | : | No. 799 EDA 2025 |

Appeal from the Judgment Entered April 14, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2015-07675

BEFORE: LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 20, 2026**

Jignesh Patel and Jay Viraj, Inc. (collectively, "Appellants") appeal from the judgment entered on April 14, 2025, in the Montgomery County Court of Common Pleas following a verdict in favor of Amit R. Patel and Ritesh Patel (collectively, "Appellees"). After careful review, we affirm.

The relevant facts and procedural history are as follows. On June 2, 2008, Jignesh[1] filed articles of incorporation for Jay Viraj, Inc. and identified himself as the corporation's president and sole owner and shareholder.[2] On July 28, 2008, Jignesh, who had recently purchased a Lukoil gas station, and Amit and Ritesh entered into an "Agreement of Commitment for Lukoil Gas

_____

[1] As Appellant Jignesh Patel and Appellees share a last name, we refer to the parties by their first name.

[2] Jignesh was the sole corporate officer and shareholder for the duration of the business.

Station" ("Agreement").[3]   The Agreement, *inter alia,* outlined Amit's responsibilities regarding the operation of the gas station:

> This agreement in between [*sic*] Jignesh Patel (President)[,] Ritesh Patel (Vice President)[,] and Amit Patel (Manager)[.]
>
> Amit Patel is responsible for the compete [*sic*] operation of Lukoil Gestation [*sic*] and Auto Repair Shop.  Also responsible for the day by day operation, and provide LukOil with their needs by completing of [*sic*] dail[y], monthly, and yearly reports.  Amit Patel will provide profit and loose [*sic*] statement to President (Jignesh Patel) every last date of the month, and give 10% from the profit to the President (Jignesh Patel) of the LukOil.  Amit Patel will not allow living [*sic*] of Lukoil until President's (Jignesh Patel) ownership.  Other th[a]n the Manager (Amit Patel), one has any kind of permission [*sic*] to interfere in to [*sic*] the running of the business of the Lukoil Gas Station and Auto Repair Shop.
>
> If any of the month Lukoil will not generate any profit and put Lukoil in loose [*sic*] then the loose [*sic*] amount will carry on for the next months profit and loose [*sic*], and get deduction of last month.  After sealing of the Lukoil Gas Station and Auto Repair Shop money will distributes [*sic*] listed below.
>
> After taking care of the depts. [*sic*] for Lukoil, President (Jignesh Patel) will get his 10% from the profit.

Exhibit P-1 (unnecessary capitalization omitted). We highlight the fact that the Agreement does not impose on Amit or Ritesh any obligation to repay any type of financing.

On August 8, 2008,  ten days after entering into the Agreement, Jignesh individually obtained a Small Business Association loan in his own name from TD Bank and used his property as collateral for the loan ("SBA loan").

---

[3] Jay Viraj, Inc. is not a party to the Agreement.

Due to a loss of business and an inability to make the required payments to Lukoil, the gas station closed in April of 2013. In November of 2013, TD Bank entered a confession of judgment against Jignesh and JayViraj, Inc.

In 2015, based on allegations that Appellees engaged in fraudulent activity and self-dealing in connection with the operation of the gas station, Appellants filed a complaint asserting claims of fraud, breach of contract, breach of fiduciary duty, and unjust enrichment against Appellees.

The case proceeded to a bench trial. On January 14, 2025, the court ruled in favor of Appellees. Appellants filed a motion for post-trial relief, which the trial court denied on February 11, 2025.

This timely appeal followed. Appellants and the trial court complied with Pa.R.A.P. 1925.[4]

Appellants raise the following issues for our review:

1. Should a new trial be awarded when the trial court improperly interprets the contract?

2. Should a new trial be awarded when the trial court makes an erroneous factual determination that fraudsters are not officers of a corporation?

3. Should a new trial be awarded when the trial court fails to impose a fiduciary duty upon fraudsters required by law?

4. Should a new trial be awarded when the trial court abuses its discretion in overlooking misconduct of fraudsters?

Appellants' Br. at 3 (unnecessary capitalization omitted).

---

[4] Appellees did not file a brief on appeal.

This appeal arises from a verdict in favor of Appellees following a non-jury trial. When reviewing a trial court's decision after a non-jury trial, our standard of review is well-established. "We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weigh the testimony of each party's witnesses and to decide which are most credible." *Parker Oil Co. v. Mico Petro and Heating Oil, LLC*, 979 A.2d 854, 856 (Pa. Super. 2009) (citation and brackets omitted). The trial judge's findings must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. *Levitt v. Patrick*, 976 A.2d 581, 589 (Pa. Super. 2009). "Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner." *Id.* (citation omitted).

**A.**

In their first issue, Appellants argue that the trial court improperly interpreted the Agreement when it held that the Agreement merely defined Amit's duties in conducting the daily operation of the business and did not require Appellees to cure defaults on the SBA loan. Appellant's Br. at 11-17. "Because contract interpretation is a question of law, this court is not bound by the trial court's interpretation." *Ragnar Benson Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citation omitted). "Our standard of review over questions of law is *de novo* and to the extent

necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision." *Id.* (citation omitted).

In particular, Appellants claim that the Agreement is ambiguous because it is "unclear as to which party is entitled to the other ninety percent of the profits[,]" "whether or not is it [*sic*] net or gross profits[,]" or which parties are responsible for debts and profits accumulated by the business. Appellants' Br. at 13. Appellants conclude, therefore, that due to these ambiguities, Appellees personally bear all obligations for the business, including curing default on the SBA loan. *Id.*

Our Supreme Court has explained that "[t]he fundamental rule in contract interpretation is to ascertain the intent of the contracting parties." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006). "When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." *Id.* "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* at 468-69.

Appellants' argument is without merit. Appellants seek to hold Appellees liable for repayment of the SBA loan and argue that the Agreement creates an ambiguity on this point. There is no language in the Agreement that imposes such an obligation upon Appellees and no language from which it is reasonable to infer that the parties agreed to impose that obligation on Appellees. Additionally, Jignesh did not execute the SBA loan until after the parties entered into the Agreement and thus, the loan did not exist when the

parties entered into the Agreement. *See* Exhibit P-1. Our review of the Agreement leads us to the same conclusion as the trial court, *i.e.*, that the Agreement merely defines Amit's "duties as conducting the daily operation of the business" and does not impose the obligation to personally repay loans. Trial Ct. Op., 5/13/25, at 7. Therefore, the Agreement does not impose on Appellees the obligation to repay any loan, including the SBA loan.

Appellants next assert that there was "fraud in the execution" of the contract and that "key terms agreed upon by the parties are missing that [Appellants] were led to believe were incorporated into the agreement." Appellants' Br. at 14-15.

It is an appellant's duty to present arguments that are sufficiently developed for our review with a brief that supports the claims with pertinent discussion, with references to the record, and with citations to legal authorities. Pa.R.A.P. 2119(a)-(c). When defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. Pa.R.A.P. 2101.

Appellants present no argument or citation to the record beyond the conclusory statements that "[h]ere, [Appellants] have presented evidence of fraud" and "[t]he evidence presented indicates that there is fraud in the execution." Appellants' Br. at 14. We decline to develop this argument on behalf of Appellants and, thus, find this issue waived.

Appellants next assert that the trial court erred because it should have interpreted the Agreement as incorporating the terms and obligations of the

SBA loan. *Id.* at 15-16. Appellants assert that the SBA loan was "clearly contemplated at the time of the [Agreement]" as the loan was "required in order to purchase the business" and that, therefore, Appellees' responsibility for "all depts. [*sic*]" in the Agreement should be interpreted as Appellees contractually agreeing to make payments on the business's debts, including the SBA loan. *Id.* at 16.

It is well established that the terms of a contract only include those terms expressly provided for in an agreement, and if the agreement incorporates terms from another agreement, the first agreement must clearly reference and specify the other agreement. *In re Est. of Atkinson*, 231 A.3d 891, 988 (Pa. Super. 2020). Here, the Agreement did not specifically and clearly identify or expressly incorporate the SBA loan documents. *See* Exhibit P-1. The vague reference to "all depts. [*sic*]" in the Agreement does not serve to identify and incorporate the SBA loan. This issue is, therefore, without merit.[5]

**B.**

In their second issue, Appellants argue that the trial court improperly determined that Amit and Ritesh were not corporate officers of Jay Viraj, Inc.

_____

[5] Appellants also assert that the trial court improperly determined that Jignesh was the only party to the SBA loan and that the loan instead constituted a corporate debt of Jay Viraj, Inc. Appellants' Br. at 17. Appellants failed to raise this issue in their statement of matters complained of on appeal and, accordingly, it is waived. *Commonwealth v. Butler*, 812 A.2d 631, 633 (Pa. Super. 2002).

pointing to the fact that Ritesh signed the Agreement as the "Vice President" and Amit as the "Manager." Appellants' Br. at 18.[6]

Pennsylvania business corporation law defines the process by which individuals may be appointed as corporate officers. Section 1732 provides that "officers shall be elected or appointed at such time, in such manner[,] and for such terms as may be fixed by or pursuant to the bylaws." 15 Pa.C.S. § 1732.

Here, the record established that Jignesh was the president and sole corporate officer and shareholder of Jay Viraj, Inc. The trial court found that there was "no credible documentary evidence" that Amit or Ritesh were corporate officers of Jay Viraj, Inc., as Appellees "are not registered as corporate officers [] in any Pennsylvania state records, state tax returns, or [f]ederal tax returns." Trial Ct. Op. at 8, 2 n.2. Confirming this conclusion is the fact that the certified record contains no documents identifying Appellees as corporate officers and the language in the Agreement identified by Appellants is not evidence that Appellees were elected or appointed as corporate officers in the manner "fixed by or pursuant to" the corporation's bylaws. *See* 15 Pa.C.S. § 1732. This argument is, thus, without merit.

**C.**

_____

[6] Appellants also assert that Ritesh "testified that he was the Vice President from the inception of Jayviraj[.]" *Id.* (citing N.T. Trial, 12/4/24, at 65-68). However, when Appellants' counsel asked whether Ritesh was the vice president of Jay Viraj, Inc. between 2008 and 2013, Ritesh testified that "[i]t is only in that agreement [that] my title is [vice president]." *Id.* at 67.

In their third issue, Appellants assert that Appellees owed Appellants a fiduciary duty because a confidential relationship existed between the parties where Jignesh "became thoroughly dependent on [Appellees] to operate the business and make the necessary payments[.]" Appellants' Br. at 22. Appellants argue that because of Jignesh's inferior position and lack of knowledge, Appellees violated the duties of a confidential relationship when they "abuse[d] their power" and failed to "hold up their end of the bargain." *Id.* at 19-20.

Appellants again fail to cite to the record to support their argument, severely hampering this Court's ability to review this issue. *See* Pa.R.A.P. 2119(c). "It is not the duty of this Court to act as appellant's counsel, and we decline to do so. We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1277–78 (Pa. Super. 2019) (citations and quotation marks omitted).

The only citation to the record provided by Appellants is a citation to the trial transcript supporting the fact that "[Amit] ridiculed [Jignesh] for having worked at McDonald's." Appellants' Br. at 21 (citing N.T. Trial, 12/4/24, at 152, 190). Appellants otherwise provide no citation to support their conclusion that Appellants "did not possess the requisite knowledge necessary to evaluate, acquire, and operate the business" or conversely that Appellees had "professed business experience." *Id.* at 19, 21. We decline to scour the

voluminous record in order to develop this argument on behalf of Appellants and, thus, find this issue waived.

**D.**

In their fourth issue, Appellants assert that the trial court abused its discretion when it denied Appellants' July 29, 2024, motion *in limine* to preclude Amit from testifying remotely via Zoom. *Id.* at 23-25. Appellants assert that "[a]lthough [Amit] presented to the [c]ourt that he was detained in Sri Lanka on a 'humanitarian matter', [] the reality is that he was in the custody of the Sri Lankan government for many months for serious charges of fixing cricket matches." *Id.* at 23.[7]

The decision to admit or preclude evidence lies within the trial court's discretion. *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*). Thus, this Court reviews a trial court's evidentiary rulings for an abuse of discretion. *Feldman v. CP Acquisitions 25, L.P.*, 325 A.3d 691, 713 (Pa. Super. 2024). An abuse of discretion is found only where "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record." *Id.* (citation omitted). We also note that "it is

---

[7] Appellants also claim that the trial court erred when it did not allow them to cross-examine Amit about why he was in Sri Lanka. Appellants' Br. at 24. The trial court did not err as the record reflects that after Appellees' counsel objected to portions of Appellants' cross-examination, Appellants merely "renew[ed] [their] objection regarding [Amit's] testimony by Zoom and the premises upon which it is based." N.T. Trial, 12/4/24, at 93.

indisputable that trial courts have broad discretion in controlling trial conduct."

***Commonwealth v. Purnell***, 259 A.3d 974, 984 (Pa. 2021).

Here, Appellants present no authority prohibiting such remote testimony or support for their position that the trial court is precluded from determining whether a witness can testify remotely. We agree with the trial court's conclusion that Appellants' objections to the remote testimony "are related to the reason for [Amit's] inability to appear in person rather than any deprivation of [Appellants'] rights." Trial Ct. Op. at 9. We emphasize that the trial court has broad discretion in conducting its trials and the trial court did not abuse its discretion in rendering its evidentiary rulings.[8]

Having found Appellants' issues either waived or meritless, we affirm the judgment.

Judgment affirmed.

_____

[8] Appellants also assert that Appellees "committed misconduct by unreasonably delaying the resolution of this matter for many years through their endless game of hiring attorneys and then forcing them to withdraw from the representation for non-payment." Appellants' Br. at 25. This issue is not clearly identified in Appellants' statement of questions involved. ***See*** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Moreover, Appellants present only a single conclusory paragraph without citation to the record or legal authority. ***See*** Pa.R.A.P. 2119(a)-(c), 2101 (undeveloped arguments may be deemed waived). For these reasons, this argument is waived.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/20/2026</u>